No. 25-2035
# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

MUNICIPALITY OF SAN JUAN,

Plaintiff - Appellant,

v.

EXXON MOBIL CORP.; SHELL PLC, f/k/a Royal Dutch Shell PLC; CHEVRON CORP.; BP PETROLEUM, f/k/a Anadarko Petroleum Corp.; BHP GROUP LIMITED; RIO TINTO PLC; XYZ CORPORATIONS 1-100; JOHN AND JANE DOES 1-100,

Defendants - Appellees,

ARCH RESOURCES INC., f/k/a Arch Coal, Inc.; PEABODY ENERGY CORPORATION,

Defendants.

_____

## ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

_____

## BRIEF OF PLAINTIFF – APPELLANT

_____

**David Efron**
**USCA No. 10,106**
**LAW OFFICES DAVID EFRON, PC**
**PO BOX 29314**
**San Juan, PR 00929-0314**
**Tel: (787) 753-6455**
**Fax: (787) 758-5515**

March 23, 2026

## <u>CORPORATE DISCLOSURE STATEMENT</u>

No corporate disclosure statement is required by F. R. App. P. 26.1 because Plaintiff – Appellant is a governmental entity.

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................iii-vi

JURISDICTIONAL STATEMENT ...............................................................1

STATEMENT OF ISSUES.......................................................................... 1-2

PREFACE ................................................................................................... 2-4

STATEMENT OF THE CASE..................................................................... 5-6

SUMMARY OF ARGUMENT ..................................................................... 6-7

ARGUMENT .............................................................................................. 7-27

   I. Statute of Limitations Tolled Under the Continuous Tort Doctrine ................ 7-11

   II. Statute of Limitations Tolled Under the Equitable Tolling Doctrine. .......... 11-14

   III. Court Should Have Allowed Discovery Before Summary Dismissal......... 14-16

   IV. Plaintiff's Counsel's Conduct Does Not Breach Rule 8.4(c)...................... 16-27

CONCLUSION .......................................................................................27

CERTIFICATE OF COMPLIANCE .......................................................... I

CERTIFICATE OF SERVICE ................................................................... II

# **TABLE OF AUTHORITIES**

**Cases**                                                                 **Pages (s)**

Abdallah v. Bain Cap. LLC, 752 F.3d 114, 120 (1st Cir. 2014)          12

Arcelay v. Sanchez, 77 P.R.R. 782, 77 D.P.R. 824, 838 (1955)         9,10

Attorney Grievance Commission v. Siskind, 401 Md. 41, 68-69, 930      18
A.2d 328 (2007)

Bailey v. Glover, 88 U.S. 342, 349-350 (1874)                        13

Berkson v. Del Monte Corp., 743 F.2d 53, 56-57 (1st Cir. 1984)       13

Bernier v. Upjohn Co., 144 F.3d 178, 180 (1st Cir.1998)              12

Bonilla v. Trebol Motors Corp., 913 F.Supp. 655, 659-60 (D.P.R. 1995)  10

Burgos-Diaz v. Hosp. HIMA San Pablo-Bayamon, 2017 U.S. Dist.          16
LEXIS 197083, *9-10 (D.P.R., Nov. 29, 2017)

Cacho González v. Santarrosa, 2019 TSPR 146, 203 D.P.R. 215 (2019)     9

Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 7  10
(1st Cir. 2005).

Centro Médico Del Turabo, Inc. v. Feliciano De Melecio, 321 F.Supp.2d   9
285, 291 (D.P.R. 2004)

Fed. Intermediate Credit Bank of Louisville v. Kentucky Bar Ass'n,     24
540 S.W.2d 14 (Ky. 1976)

Fustaguio Do Nascimento v. Mukasey, 549 F.3d 12, 18-19 (1st Cir.2008)  12

Gonzalez v. United States, 284 F.3d 281, 291 (1st Cir.2002)           12

Holmberg v. Armbrecht, 327 U.S. 392 (1946)                           13

In re Madrano, 956 F.2d 101, 102 (5th Cir.1992)                       18

LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998) .......... 16

Lopez-Flores v. Cruz-Santiago, 526 F. Supp. 2d 188, 190 (D.P.R. 2007) .......... 8

M.R. (Vega Alta), Inc. v. Caribe Gen. Elec. Prods., Inc., 31 F.Supp 2d 226, 240 (D.P.R. 1998) .......... 8,10

McMillan v. Rodríguez-Negron, 511 F. Supp. 3d 75, 83 (D.P.R. 2020) .......... 8

Mok v. 21 Mott St. Restaurant Corp., 2017 WL 3981308 (S.D.N.Y. 2017) .......... 17

Morales–Villalobos v. García–Llorens, 316 F.3d 51, 56 (1st Cir.2003) .......... 15

Neves v. Holder, 613 F.3d 30, 36 (1st Cir. 2010) .......... 12

New England Data Servs., Inc. v. Becher, 829 F.2d 286, 290 (1st Cir. 1987) .......... 14,15

New Eng. Ins. Co. v. Sylvia, 783 F.Supp. 6, 10 (D.N.H. 1991) .......... 18

Odom v. Syracuse City Sch. Dist., No. 519CV835TJMATB, 2020 WL 1689879, at *8 (N.D.N.Y. Apr. 7, 2020) .......... 19,24

Peters v. Committee on Grievances for U.S. Dist. Court for the Southern District of New York, 748 F. 3d 456 (2d Cir 2014) .......... 17

Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 631, 682 N.E.2d 624 (1997) .......... 12

Provencher v. CVS Pharmacy, Div. Of Melville Corp., 145 F.3d 5, 14 (1st Cir. 1998) .......... 9

Rodi v. Southern New Eng. Sch. of Law, 389 F.3d 5, 17 (1st Cir. 2004) .......... 16

Quality Cleaning Prods. R.C. Inc. v. SCA Tissue N. Am., LLC, 794 F.3d 200, 206 (1st Cir. 2015) — 9

Romero—Barcelo v. Acevedo-Vila, 275 F.Supp.2d 177, 192 (D.P.R. 2003) — 18

S. Central Bell Telephone Co. v. Texaco, Inc., 418 So. 2d 531(La. 1982) — 11

Sealed Appellant 1 v. Sealed Appellee 1, 211 F.3d 252, 254-55 (5th Cir.2000) — 18

Ticket Ctr., Inc. v. Banco Popular de P.R., 2006 U.S. Dist. LEXIS 55388, *3 — 15

Torres v. Hosp. San Cristobal, 831 F. Supp. 2d 540, 544 (D.P.R. 2011) — 8,9,11

V.W.F. Corp. v. Capital Housing Partners CLXII, 2007 U.S. Dist. LEXIS 34865, 2007 WL 1437503, at *5 (D.P.R. May 11, 2007) — 9-10

Velazquez v. Chardon, 736 F.2d 831, 833 (1st Cir. 1984) — 9

Villarini-Garcia v. Hosp. Del Maestro, 112 F.3d 5 (1st Cir. 1997) and 8 F.3d 81 (1993) — 13,14

Winesberry v. St. Bernard Par. Gov't, 407 So. 3d 700 — 11

**Federal Statutes**

28 U.S.C. §1291……………………………………………………… 1

**Other Authorities**

Fed.R.Civ.P.11 …………………..………………………………….. 24

Fed.R.Civ.P.84 …………………..………………………………….. 21

Rule 1.1. of the ABA Model Rules of Professional Conduct — 27

Rule 8.4 of the ABA Model Rules of Professional Conduct — 2,5,6,16-18,20,24-26

R. 18(C) of the ABA Model Rules for Lawyer Disciplinary Enforcement — 18

A.B.A. Model Rule of Professional Conduct 3.1………..………..… — 20

*AmJur Pleading and Practice Forms* (American Jurisprudence Pleading and Practice Forms Annotated (St. Paul, MN: West Group 1999 Rev.) — 22

Bender's *Forms of Discovery* (Newark, N.J., Mathew Bender & Co., Inc., Lexis Nexis Group 2002) — 22

Black's Law Dictionary (9th ed. 2009) — 17,18

DuVivier, *Nothing New under the Sun: Plagiarism in Practice,* Colo. Law., 32-May Colo. Law 53 at *54 — 21

Joy & McMunigal, "The Problems of Plagiarism as an Ethics Offense," *Criminal Justice,* Volume 26, Number 2, Summer 2011 — 24

Posner, *On Plagiarism,* The Atlantic Monthly, at p. 23 (April 2002) — 19

Shatz & McGrath, *Beg, Borrow or Steal: Plagiarism vs. Copying in Legal Writing* — 19, 20,24

## JURISDICTIONAL STATEMENT

This court has jurisdiction over this appeal from a final decision of the United States District of Puerto Rico under 28 U.S.C. § 1291. The District Court entered the final order from which this appeal is filed on October 8, 2025 (Docket No. 301 (Ad. 40)).[1] On October 23, 2025, the Plaintiff filed a Notice of Appeal (Docket No. 302 (Ad. 41)) to the First Circuit Court of Appeals from the OPINION AND ORDER entered on October 8, 2025 (Docket No. 298 (Ad. 27)), the JUDGMENT entered on that same date DISMISSING this case with prejudice as to all claims against Exxon, Chevron, ConocoPhillips, Motiva, Occidental, BP, and Shell (Docket No. 301 (Ad. 40)), and the ORDERS entered on April 9 and May 7, 2025 ordering Plaintiff's attorney to pay sanctions (Dockets No. 167 and193 (Ad. 1 and 25)).

## STATEMENT OF ISSUES

1. Did the District Court err in holding that the statute of limitations was not tolled in this case under the Puerto Rico Supreme Court's continuous tort doctrine?

2. Did the District Court err in holding that the statute of limitations was not tolled in this case under the equitable tolling doctrine?

---

[1] The judge purportedly signed said order on September 30, 2025, before Plaintiff's motion was even filed (See Docket Nos. 298 and 297). References to the Addendum to Plaintiff's Brief will be by "Ad." followed by the page number(s); references to the Record Appendix of this brief will be by "R.A.", followed by the page number(s).

- 1 -

3. Did the District Court err in not following the Magistrate Judge's recommendation that it should reserve judgment on the motions to dismiss the antitrust claims until after discovery is conducted?

4. Did the District Court err in finding that Plaintiff's counsel violated Rule 8.4(c) of the ABA Model Rules of Professional Conduct by copying pleadings (with their author's consent) from a related case and filing them in this case virtually *verbatim*?

## **PREFACE**

This case deals with one of the most important political issues of our time, that of climate change and its effect on our planet, and in this case its effect on the City of San Juan, Puerto Rico. The two sister cases were previously dismissed, that of the Commonwealth of Puerto Rico, which voluntarily dismissed its case without even a dispositive motion, but by political decision and that of the other municipalities, led by the Municipality of Bayamón, summarily dismissed before this one.

While the planet boils and suffers climate change and all of its effects, activist politicians and judges do whatever is necessary to avoid having the real culprits held accountable.

As to summary dismissal, this case should not have been victim of this fate, particularly since it originates from a significant humanitarian crisis. On and around

September 20, 2017, Hurricanes Irma and Maria struck Puerto Rico in close succession, destroying critical infrastructure, severely damaging residential areas, resulting in substantial loss of life, and displacing hundreds of thousands who were left without basic necessities and services.

San Juan, the capital of Puerto Rico, and its most populated city, faced immense challenges in the aftermath of disaster, focusing efforts on repairing infrastructure, restoring access to potable water, reopening schools and hospitals, and supporting residents who endured extended periods without electricity. To this date, the electric grid has not been repaired. The financial damages are estimated to have surpassed $10 billion, while the full extent of the human impact remains immeasurable with over 500 deaths calculated in San Juan. Even after eight and a half years, the reconstruction of San Juan and Puerto Rico has never taken place.

The extent of devastation cannot be attributed solely to natural causes. For many years (over 50), the defendants—major fossil fuel corporations—had access to internal research indicating that their products contributed to global warming and increased the severity of tropical hurricanes. Instead of issuing warnings or taking appropriate steps to address these issues, they supported and financed public relations efforts aimed at challenging and undermining climate science, and thereby delaying any mitigation pushing a false narrative that the climate change allegations are false, therefore developing a strategy of climate change denial. The Complaint

alleges an organized scheme involving racketeering and deception, which ultimately resulted in communities such as San Juan, Puerto Rico bearing the costs associated with climate-related damages.

In the related Bayamon Case the district court dismissed the matter on several grounds. The dismissal was primarily based on a stringent interpretation of the statute of limitations, which, in our assessment, diverges from established precedent and principles of equity, as it occurred without a hearing on the merits or provision for discovery. In contrast, the Magistrate Judge's Report and Recommendation in this case (Docket No. 239, R.A. 844-923) explicitly recognizes and recommends that additional discovery should be permitted prior to dismissal. The Opinion and Order in the Bayamon Case largely resulted from the lack of further evidence that could have been obtained through discovery.

Plaintiff-Appellant respectfully asserts that, as observed by the Magistrate Judge, "at this stage, … plaintiff [had] sufficiently alleged that defendants engaged in a continued pattern of unlawful acts or omissions which cause foreseeable damages." [R.A. 877]. Consequently, the District Court erred in determining that the statute of limitations was not tolled in accordance with the Puerto Rico Supreme Court's continuous tort doctrine. Furthermore, Plaintiff-Appellant concurs with the Magistrate Judge's view that, even if the injury were not deemed continuous, equitable tolling would render plaintiff's claims timely.

## STATEMENT OF THE CASE

The pendent issue before this Honorable Court concerns whether Plaintiff's counsel's actions—specifically, adapting or copying pleadings from a related case with the author's permission and submitting them in this matter sometimes nearly *verbatim*—constitute a violation of Rule 8.4(c) of the A.B.A. Model Rules of Professional Conduct. The District Court directed Plaintiff's counsel to show cause as to why disciplinary action should not be imposed for the alleged infraction of this rule.[2]

Plaintiff – Appellant respectfully submits that there is no cause to discipline its counsel for violation of Model Rule 8.4(c). Plaintiff's counsel's authorized copying of pleadings filed by other attorneys with whom he is collaborating in litigating substantially the same issues before another judge of this Court cannot be considered "plagiarism", much less conduct involving "dishonesty, fraud, deceit or misrepresentation" in violation of Rule 8.4(c).[3] This type of copying does not constitute "plagiarism" as understood in academic contexts. Once a pleading is filed,

---

[2] An exaggerated economic sanction of $7000 was also imposed for allegedly not communicating timely with opposing counsel which the undersigned denies in his Motion to Show Cause (Docket No. 186).

[3] The fact is Plaintiff, through its counsel, moved the District Court to consolidate these cases on two separate occasions as per the District Court's own suggestion and "in the interest of judicial and procedural efficiency" and listed the sister case as "related" in its Civil Cover Sheet when it filed the Complaint. *See* Docket No. 1-1, and *Municipality of Bayamon, et al., v. Exxon Mobil Corp., et al.*, Civ. Case No. 22-1550 (SCC-HRV)(the "Bayamon Case") at Docket Nos. 286 and 405.

it is considered a public document which anyone may use. A lawyer's signature on a brief signifies responsibility for the arguments presented rather than authorship, and it implies that the brief is submitted in good faith and is not frivolous. Additionally, in contrast to academic writing, legal briefs are intended to advocate for a client, with their value grounded in persuasiveness rather than originality of thought or expression. The practice of replicating legal arguments and pleadings is intentionally employed to serve the client's best interests by promoting consistency and thoroughness, particularly in complex litigation involving multiple simultaneous proceedings. This approach aligns with the attorney's duty of competence as outlined in Model Rule 1.1. Neither Rule 8.4(c) nor the cases referenced by the Court in its Opinion and Order (Docket No. 167) prohibit attorneys from utilizing pleadings and legal arguments previously used by others in different matters. Notably, at least two prominent Bar Associations have expressly concluded that such actions do not inherently constitute a violation of Rule 8.4(c). Therefore, it is respectfully asserted that Plaintiff's counsel's conduct did not breach Rule 8.4(c), and that the District Court erred in disciplining counsel based on allegations of plagiarism.

## SUMMARY OF ARGUMENT

Plaintiff maintains that the District Court, in its orders, erred in finding that Plaintiff's counsel violated Rule 8.4(c) of the ABA Model Rules of Professional

Conduct by copying pleadings (with their author's consent) from a related case and filing them in this case virtually *verbatim*; erred in holding that the statute of limitations was not tolled in this case under the Puerto Rico Supreme Court's continuous tort doctrine; erred in holding that the statute of limitations was not tolled in this case under the equitable tolling doctrine; and erred in not following the Magistrate Judge's recommendation that it should reserve judgment on the motions to dismiss the antitrust claims until after discovery is conducted.

## ARGUMENT

### I. Statute of Limitations Tolled Under the Continuous Tort Doctrine

The judge in the sister Bayamon Case had previously dismissed with prejudice against co-defendants Exxon, Shell, Chevron, BP, ConocoPhillips and Motive due to its understanding that the Statute of Limitations had lapsed. In this case, and as succinctly explained by the Magistrate Judge, Defendants' joint motion moved the Court to dismiss Plaintiff's claims on the basis that the claims are barred, arguing that the statute of limitations began to run on September of 2017 when Hurricanes Irma and Maria hit the island because those natural catastrophes should have put Plaintiff on notice of its purported injuries. Plaintiff alleged, and the Magistrate Judge here agreed, that a tort which is continuous and tolled extends the time of the statute by law.

The statute of limitations for RICO and antitrust claims is four years and one year for the Puerto Rico law claims. It begins to run from the time the aggrieved person had

– 7 –

notice of the injury and notice of the person who caused it. M.R. (Vega Alta), Inc. v. Caribe Gen. Elec. Prods., Inc., 31 F. Supp. 2d 226, 239 (D.P.R. 1998) (citations omitted). Notice "does not require actual knowledge; it is enough that the would-be plaintiff had notice that would have led a reasonable person to investigate and so uncover the needed information." Lopez-Flores v. Cruz-Santiago, 526 F. Supp. 2d 188, 190 (D.P.R. 2007).

Plaintiff has consistently alleged that it filed within one year of knowing that the hurricanes could be tied to Defendants' activities; that Defendants' actions constitute continuous wrongful conduct; and that the doctrine of equitable tolling applies.

The Puerto Rico Supreme Court has defined the continuous tort doctrine as a "continued, or uninterrupted, disturbance of unlawful acts or omissions which cause foreseeable lasting damages." McMillan v. Rodriguez-Negron, 511 F. Supp. 3d 75, 83 (D.P.R. 2020)(citations omitted). "Since the tortfeasor's illegal acts are continuous, the cause of action continually renews itself, for the statute of limitation purposes, until the tortfeasor ceases his harmful conduct." Id.

A "continuous tort," arises from ongoing unlawful conduct and not from a continuing harmful effect. See Torres v. Hosp. San Cristobal, 831 F. Supp. 2d 540, 544 (D.P.R. 2011). This is why Plaintiff alleged a pattern of uninterrupted acts of deceit on Defendants' part. Specifically, Plaintiff alleged that Defendants have sold and continue to sell their products while engaging in a decades-long misinformation campaign. This campaign entails producing and disseminating articles, pamphlets, and reports; and having

- 8 -

climate-denying scientists on payroll. This behavior has prompted an inquiry by the House Committee on Oversight and Reform.

In continuous tort cases, "the statute of limitations begins to run when the tortious conduct ceases, not when it first takes place." Torres v. Hospital San Cristobal, 831 F.Supp.2d 540, 544 (D.P.R. Dec. 9, 2011) (SEC) (citing Arcelay v. Sanchez, 77 P.R.R. 782, 77 D.P.R. 824, 838 (1955)). Therefore, even if the claims are time barred, they survive under the "continuing violation" doctrine or as a "continuous tort" which, in general terms, creates "an equitable exception to the statute of limitations because it allows for recovery for claims filed outside of the statutory period when the unlawful behavior is deemed ongoing." Centro Médico Del Turabo, Inc. v. Feliciano De Melecio, 321 F.Supp.2d 285, 291 (D.P.R. 2004) (citing Provencher v. CVS Pharmacy, Div. Of Melville Corp., 145 F.3d 5, 14 (1st Cir. 1998). The continuing violation doctrine had its "genesis in decisions interpreting Title VII of the Civil Rights Act of 1964, [but] it has been applied to other contexts." Velazquez v. Chardon, 736 F.2d 831, 833 (1st Cir. 1984); see also Quality Cleaning Prods. R.C. Inc. v. SCA Tissue N. Am., LLC, 794 F.3d 200, 206 (1st Cir. 2015) (collecting cases). The Puerto Rico Supreme Court has not specifically recognized application of the continuing violation doctrine in cases involving tortious interference. See Cacho Gonzalez v. Santarrosa, 2019 TSPR 146, 203 D.P.R. 215, 225-26 (2019). There is, however, precedent applying the continuing violation doctrine to the tortious interference context. In V.W.F. Corp. v. Capital Housing Partners CLXII, 2007 U.S.

Dist. LEXIS 34865, 2007 WL 1437503, at *5 (D.P.R. May 11, 2007), the court asked whether therein plaintiffs sufficiently pled that "(1) the one act that took place within the prescription period constituted an unlawful act and (2) that it was part of a series of unlawful acts." Id. (citing Bonilla v. Trebol Motors Corp., 913 F.Supp. 655, 659-60 (D.P.R. 1995); see also Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 7 (1st Cir. 2005). The V.W.F. court found that plaintiffs' allegations satisfy both elements. Id. The court there clearly applied those standards to the tortious interference context and asked whether the plaintiffs' allegations sufficiently pled a continuing violation by satisfying both elements.

As previously indicated, the Plaintiff asserts that the statute of limitations remains unexpired due to the ongoing nature of its damages, and consequently, the ultimate impact of Defendants' negligence has not yet been determined. The Plaintiff explicitly maintains that its claim is predicated on the doctrine of continuous tort. In those cases, the statute of limitations begins to run when the tortious conduct ceases, not when it first takes place. Arcelay v. Sanchez Martinez, 77 P.R.R. 782, 77 D.P.R. 824, 838 (1955). Under Puerto Rico law, a continuous tort arises from ongoing unlawful conduct, rather than a continuing harmful effect. In other words, for there to be a continuous tort, a defendant must engage in continuous negligent conduct that causes further harm to the plaintiff. M.R. (Vega Alta), Inc. v. Caribe Gen. Elec. Prods., Inc., 31 F.Supp 2d 226, 240

(D.P.R. 1998). Torres v. Hosp. San Cristobal, 831 F. Supp. 2d 540. This aligns consistently with the assertions made by the Plaintiff in the Complaint.

Plaintiff's primary argument is that it has alleged a continuous tort for which it is entitled to damages from September 20, 2017 forward. This argument is supported by S. Central Bell Telephone Co. v. Texaco, Inc., 418 So. 2d 531(La. 1982), in which the court held that when tortious behavior and resulting damages persist, the limitation period does not commence until the harmful conduct has ceased; and that in instances where the source of injury is ongoing and leads to successive damages, the prescriptive period begins from the termination of the wrongful conduct that caused the harm. See Winesberry v. St. Bernard Par. Gov't, 407 So. 3d 700.

Plaintiff submits there is no doubt that the damage to the infrastructure and to the electrical system in the 2017 hurricanes continue to the present. At the time of the filings of the original suit in the district court, the P.R. power company had reported over 142,000 households without electricity. San Juan and Puerto Rico are far from its restructuring, even at present.

**II. Statute of Limitations Tolled Under the Equitable Tolling Doctrine**

As we've stated, in this case, the Magistrate Judge opined and ruled that Plaintiff has sufficiently alleged that defendants engaged in a continued pattern of unlawful acts or omissions which cause foreseeable damages. Subsequently, the Magistrate Judge addressed plaintiff's equitable tolling argument as follows:

- 11 -

Even if the Court deems that the conduct is not continuous, plaintiff argues, the limitations period is tolled regarding defendants pre-2017 statements because they fraudulently concealed the nature of their disinformation campaign.

"The equitable tolling doctrine extends statutory deadlines in extraordinary circumstances for parties who were prevented from complying with them through no fault or lack of diligence of their own." See *Neves v. Holder,* 613 F.3d 30, 36 (1st Cir. 2010) (citing Fustaguio Do Nascimento v. Mukasey, 549 F.3d 12, 18-19 (1st Cir.2008) and Gonzalez v. United States, 284 F.3d 281, 291 (1st Cir.2002)). Docket No. 339 at p. 34.

Furthermore, the Court is certainly privy to the fact that the Plaintiff asserts it was unable to file at an earlier date due to the Defendants' alleged intentional concealment of the scope of their actions. Plaintiff's position throughout has been that general knowledge of fossil fuels' connection to climate change would not be enough to trigger the statute of limitations. Because this is an action based on fraud and concealment, the triggering date is when Plaintiff learned of the deception. The doctrine of equitable tolling applies "if a plaintiff exercising reasonable diligence could not have discovered information essential to the suit." Abdallah v. Bain Cap. LLC, 752 F.3d 114, 120 (1st Cir. 2014) (citing Bernier v. Upjohn Co., 144 F.3d 178, 180 (1st Cir.1998) and Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 631, 682 N.E.2d 624 (1997)). Upon application of the equitable tolling criteria, the Magistrate Judge determined that Plaintiff adequately alleged facts supporting the doctrine's relevance to this case. Plaintiff claimed to have diligently pursued its rights, undertaking investigations prior to initiating proceedings. Additionally, it maintained that extraordinary circumstances were present due to a concerted campaign of deception by the defendants. The Magistrate Judge concluded that, notwithstanding any discontinuity in the injury, equitable tolling would render Plaintiff's claims timely.

The primary basis for the opinion and judgment in the Bayamon case, subsequently copied by the judge in this case, stemmed from that court's interpretation of the statute of limitations. Nevertheless, that court failed to consider that the statute of limitations may be extended in circumstances where the defendants have engaged in fraudulent conduct.

Historically, and as early as 1874, the Supreme Court has recognized that a defendant's concealment of fraud can prevent the defendant from invoking a limitations bar and that the statute of limitations will not run while fraud is concealed. "[W]hen there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing, or those in privity with him." Bailey v. Glover, 88 U.S. 342, 349-350 (1874). The Supreme Court has also stated that the mere lapse of time does not bar such a suit while fraud is concealed. The limitation must be read in light of equitable principles. *See*, Holmberg v. Armbrecht, 327 U.S. 392 (1946).

Plaintiff is cognizant that "[c]onclusory allegations of due diligence are not sufficient ... where a plaintiff has utterly failed to make even the requisite allegations, he cannot claim that his underlying cause of action was fraudulently concealed." Berkson v. Del Monte Corp., 743 F.2d 53, 56-57 (1st Cir. 1984).

This Honorable First Circuit Court of Appeals established in Villarini-Garcia v. Hosp. Del Maestro, 112 F.3d 5 (1st Cir. 1997) and 8 F.3d 81 (1993) in a case we prevailed upon over 3 decades ago, that:

- 13 -

the knowledge required to start the statute running is knowledge not only of harm but also of the origin of the injury, which we take to include knowledge of the wrong and a causal link between the wrong and some harm. But actual knowledge is not required where, by due diligence, such knowledge would likely have been acquired. Actual knowledge is a matter of fact, but the concept of due diligence has buried within it a normative question of how much diligence *should* be expected of a reasonable lay person. Villarini-Garcia v. Hosp. Del Maestro, 8 F.3d 81, 84 (citations omitted).

## III. Court Should Have Allowed Discovery Before Summary Dismissal

As we've argued, the Magistrate Judge's Report and Recommendation in this case (Docket No. 239, R.A. 844-923) explicitly recognizes and recommends that additional discovery should be permitted prior to dismissal and the Opinion and Order in the Bayamon Case largely resulted from the lack of further evidence that could have been obtained through discovery.

It is evident from Plaintiff's submissions that its arguments concerning the tolling of the statute of limitations—whether under the continuous tort doctrine or the equitable tolling doctrine—are closely linked to its allegations of fraud and deceit by the defendants. This Honorable First Circuit has been clear in its reluctance to automatically dismiss RICO cases at the pleading stage if some details are missing. New England Data Servs., Inc. v. Becher, 829 F.2d 286, 290 (1st Cir. 1987). Plaintiff moved the Court to allow discovery after considering the following factors laid out in *Becher:* (1) whether the plaintiff presents "a general scheme to defraud," (2) whether the plaintiff's allegations "make it likely that the defendant used interstate

mail or telecommunications facilities," and (3) whether "the specific information as to use is likely in the exclusive control of the defendant." *Id.* at 290-91.

After examining the Plaintiff's pleadings, the Magistrate Judge—citing Becher—recommended granting the Plaintiff discovery on the RICO claims. The Judge stated that the Plaintiff has adequately alleged that much of the information regarding the predicate acts is likely within the Defendants' control. The Judge explained:

> Taking as true plaintiff's allegations, it is reasonable to deduce that defendants should have discoverable information regarding the "who, what, when, where" of the communications. As such, I recommend that the presiding judge allow limited discovery regarding the information in defendants' possession. *See Becher,* 829 F.2d at 290. [R.A. 892].

Plaintiff also concurs with the Magistrate Judge that the procedural background of these cases holds significant relevance. As he concluded, the cases cited by Defendants were all decided at the summary judgment stage, or after a trial was conducted. "Having access to such a developed record puts the court in a proper position to decide the issues at hand." [R.A. 907] Making those determinations before allowing any discovery is premature and judgment should be reserved until after discovery. Ticket Ctr., Inc. v. Banco Popular de P.R., 2006 U.S. Dist. LEXIS 55388, *3 (holding that "antitrust actions should rarely be dismissed prior to giving the plaintiff ample opportunity for discovery.") (citing Morales–Villalobos v. Garcia–Llorens, 316 F.3d 51, 56 (1st Cir.2003) (reversing lower court dismissal

because questions of fact, on which antitrust actions routinely hinge, should not be decided on a motion to dismiss).

Furthermore, when the defendant's motion to dismiss raises a statute of limitations challenge, dismissal is appropriate if "the pleader's allegations leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998) (emphasis added). When the complaint appears to comply with the statute of limitations, then the Court should permit discovery and allow the moving party to raise this argument later in a motion for summary judgment. See Rodi v. Southern New Eng. Sch. of Law, 389 F.3d 5, 17 (1st Cir. 2004) (holding that dismissal is appropriate only when the complaint and other documents show "beyond doubt" that the limitations period has run); see also Burgos-Diaz v. Hosp. HIMA San Pablo-Bayamon, 2017 U.S. Dist. LEXIS 197083, *9-10 (D.P.R., Nov. 29, 2017).

### IV. Plaintiff's Counsel's Conduct Does Not Breach Rule 8.4(c)

On April 9, 2025, the District Judge issued an Opinion and Order wherein it determined, *inter alia*, that Plaintiff's counsel had engaged in ethical misconduct in the form of "plagiarism" (Docket No. 167 (Ad. 1-24)). The Court surveyed five of Plaintiff's filings in the case and compared them to those filed in a related case by different counsel in the Bayamon Case. The Court concluded that these five filings, totaling approximately 440 pages between all, were substantially "plagiarized" from

– 16 –

those filed in the related case. [Ad.13-23]. The allegedly "plagiarized" filings include the 241-page Complaint, facilitated by the authors to us by email to maintain uniformity, and several oppositions to motions to dismiss, as well as a racketeering case statement which this Court never required, and a motion for leave to file omnibus-style oppositions. The District Judge specifically found that this alleged "plagiarism" amounted to attorney misconduct in violation of Model Rule of Professional Conduct 8.4(c), and that it "should merit either the imposition of monetary sanctions, disciplinary action, or both." Id. at 23.

Rule 8.4(c) of the A.B.A. Model Rules of Professional Conduct provides that "[a] lawyer or law firm shall not: ...engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Although the ethics rules do not define misrepresentation, it is understood to mean "the act of making a false or misleading assertion about something, usually with the intent to deceive." *Black's Law Dict.* (9th ed. 2009). The *mens rea* requirement is not specified in Rule 8.4(c) and varies by jurisdiction and types of offense. Thus, some jurisdictions require venal intent or at least intent to deceive as the *mens rea* standard for policing this rule. *See* Peters v. Committee on Grievances for U.S. Dist. Court for the Southern District of New York, 748 F. 3d 456 (2d Cir 2014) (venal intent); Mok v. 21 Mott St. Restaurant Corp., 2017 WL 3981308 (S.D.N.Y. 2017)(intent to deceive by intentionally failing to disclose client's death until after more than several months into the case). In

general, a Rule 8.4(c) ethics violation for fraud and deceit requires an intent to deceive, but violations for misrepresentation and dishonesty both have knowledge as the *mens rea* requirement. Negligence is not the appropriate *mens rea* standard for Rule 8.4 (c) because offenses involving moral blameworthiness generally require actual knowledge. *See*, e.g., *Restatement of the Law Governing Lawyers* (3rd) §5 comment (d) (noting that offenses involving moral blameworthiness generally require a knowing violation). Disciplinary action for misrepresentation cannot arise from a mistake, misunderstanding or inadvertence. See, Id; Attorney Grievance Commission v. Siskind, 401 Md. 41, 68-69, 930 A.2d 328 (2007).

Ethical violations in the federal forum must be proven by "clear and convincing, evidence". *See* Sealed Appellant 1 v. Sealed Appellee 1, 211 F.3d 252, 254-55 (5th Cir.2000); In re Madrano, 956 F.2d 101, 102 (5th Cir.1992); Romero—Barcelo v. Acevedo-Vila, 275 F.Supp.2d 177, 192 (D.P.R. 2003); New Eng. Ins. Co. v. Sylvia, 783 F.Supp. 6, 10 (D.N.H. 1991); American Bar Association ("ABA"), Model Rules for Lawyer Disciplinary Enforcement, R. 18(C).

In the present case, there exists no probable cause to believe that Plaintiff's counsel's authorized copying of pleadings used by his colleagues in another related case before this Court constitutes "plagiarism" and/or is a violation of Model Rule 8.4(c). Black's Law Dictionary defines "plagiarism" as the "deliberate and knowing presentation of another person's original ideas or creative expressions as one's own."

*Black's Law Did.* (9th ed. 2009). This definition "is not particularly helpful for determining what constitutes plagiarism for practicing lawyers." Shatz & McGrath, *Beg, Borrow or Steal. Plagiarism vs. Copying in Legal Writing,* California Litigation Vol. 26, No. 3 (2013). This is so because "[l]egal arguments are presented to courts for evaluation of their merits, not their origins." Id. Indeed, Judge Richard Posner has written that "plagiarism" is "innocent" when done in the legal context where "no value is attached to originality..." Posner, *On Plagiarism,* The Atlantic Monthly, at p. 23 (April 2002).

Here, Plaintiff's counsel's authorized copying of pleadings submitted in a sister case by other attorneys with whom he is collaborating in litigating substantially the same issues cannot be considered "plagiarism" in the traditional sense used in the academic setting. The District Judge's Opinion and Order attempts to analogize Plaintiff's counsel's copying, without attribution,[4] of pleadings in other, related litigation, to "plagiarism" in academia. She states: "[a]s in law school, passing someone else's work off as one's own is wrong as a matter of fact and professional ethics." Opinion and Order at p. 20 (citing Odom v. Syracuse City Sch. Dist., No. 519CV835TJMATB, 2020 WL 1689879, at *8 (N.D.N.Y. Apr. 7, 2020). But there are important and significant differences between a lawyer's conduct in litigation

---

[4] Plaintiff's counsel did give attribution for many of the motions filed, on its first page of each motion.

and that of a student in an academic setting which the Judge's analysis failed to consider.

Although some courts have invoked Rule 8.4(c) to discipline lawyers who plagiarize in academic settings, litigation filings serve a wholly different purpose. Unlike academic papers, which purport to reflect the author's original work and analysis, legal briefs are submitted to present an argument on behalf of a client, and their value derives from their persuasiveness, not from their originality of thought or expression. A lawyer's signature on a brief is not a representation of authorship. much less of sole authorship, but rather a commitment to take responsibility for the contentions in the brief and an implied representation that the brief is not frivolous. *See*, Fed.R.Civ.P. 11; A.B.A. Model Rule of Professional Conduct 3.1.

Academic writing and litigation writing have very different purposes and norms. The purpose of a litigation filing is to persuade the Court, not to convey an original idea or to express an idea in an original way. *See*, Shatz & McGrath, *Beg, Borrow or Steal: Plagiarism vs. Copying in Legal Writing, supra*, ("There are no bonus points for creative writing, rhetorical flourish, or intellectual brilliance. In fact, novel ideas are typically the weakest legal position and the hardest to argue."). This contrasts with academic works, which aim to present an original idea in the author's own words.

Moreover, litigation filings are tailored for clients, who have an overriding

interest in competence, persuasiveness and efficiency, rather than originality. If the lawyer can make an effective argument by recycling arguments articulated by others, this will inure to the client's benefit inasmuch as it will not only persuade the court but also save money, time and effort. *See*, e.g., DuVivier, *Nothing New under the Sun: Plagiarism in Practice,* Colo. Law., 32-May Colo. Law 53 at *54 ("The client has nothing to gain from paying an attorney to start from scratch with each new document"). In law, the purpose of writing is instrumental, not expressive. The goal is to produce an accurate, precise, and effective document for a client as efficiently as possible, not to demonstrate the author's personal creativity. For this reason, lawyers and judges often reuse or adapt existing legal texts.

These goals — competence, persuasiveness and efficiency — lead to acceptance in litigation of many kinds of unacknowledged copying which would otherwise require citations in academia. Modern legal practice is rife with examples. Law firms and legal offices of all sorts -- including the U.S. Attorneys' Office and the Federal Public Defender -- maintain copies of briefs and pleadings for their attorneys to consult and reuse. Senior attorneys often sign copies of documents drafted primarily by junior lawyers in their employ. Prestigious professional associations -- such as the Defense Research Institute, the National Association of Criminal Defense Lawyers and the American Bar Association -- maintain "brief banks" for their members to copy and use in their own cases. The Federal Rules of Civil Procedure endorsed the practice

of using "legal forms" as models for pleadings in Rule 84 and included an Appendix of Forms for practitioners to use in drafting complaints and other documents. Several widely used practice books are premised on the expectation that lawyers will borrow their forms — for example, the sixteen volume set of *Bender's Forms of Discovery* (Newark, N.J., Mathew Bender & Co., Inc., Lexis Nexis Group 2002), or the twenty-five-volume set of *AmJur Pleading and Practice Forms* (American Jurisprudence Pleading and Practice Forms Annotated (St. Paul, MN: West Group 1999 Rev.). In Puerto Rico, where notarial work must be performed by a lawyer, the Puerto Rico Notary Association maintains a database of notarial models, which encourages Notaries across the island to copy in order to provide the highest quality services to their clients and avoid the ethical pitfalls which often plague notarial practice.

In sum, throughout the United States, legal practice has routinely and traditionally involved the exchange of model pleadings, briefs and other documents which lawyers copy and adapt to their own cases. There is nothing inherently deceitful about this practice; indeed, it is openly carried out and fomented by Local and State Bar Associations as well as other professional legal organizations. It is encouraged because it serves the best interests of clients and lawyers alike by furthering the goals of competency, persuasiveness and efficiency.

Furthermore, where, as here, lawyers are collaborating with each other in related litigation involving the same or similar issues, it also serves the clients' best

interests to ensure competence and uniformity in briefing. Failure to ensure uniformity runs the risk of provoking inconsistent judicial decisions, which may adversely affect the interests of all similarly situated clients. Moreover, where complex issues are at stake (such as those involved in assessing responsibility for climate change), failure to include specific arguments or language contained in other, similar pleadings may violate a lawyer's duty of competence. As such, Plaintiff's counsel's copying of language used in other briefs may well have been essential to ensure competent representation of his client. It was also consistent with Plaintiff's reiterated request to have its case consolidated with the Bayamon Case.

Briefs are not precedential, so citing the prior brief would not add persuasive force to the new brief. Thus, the lawyer's client is not prejudiced even if the lawyer omits attribution to a prior brief. Nor is the original author harmed by the omission of attribution in the new brief. The original author drafted the prior brief to serve the lawyer's own client's objectives. Once the brief is publicly filed, those objectives are served, and the brief's contents are in the public domain. The lawyer is entitled to receive compensation for drafting and filing that brief in accordance with the lawyer's contractual relationship with the client, and that compensation is not diminished if some other lawyer later copies from the brief.

Nor is the Court deceived. A lawyer's signature on a brief is not a claim of authorship or of exclusive authorship. While procedural rules require that briefs be

signed by a lawyer, the purpose of these rules is to identify the lawyer who is subject to sanction if the brief is frivolous, not to identify the author. *See,* e.g., Fed.R.Civ.P. 11; *see also*, Joy & McMunigal, "The Problems of Plagiarism as an Ethics Offense," *Criminal Justice,* Volume 26, Number 2, Summer 2011 ("Originality, for example, is notably absent from the list of representations Rule 11 states that a lawyer certifies by signing [a brief]."); cf., Fed. Intermediate Credit Bank of Louisville v. Kentucky Bar Ass'n, 540 S.W.2d 14 (Ky. 1976) ("Legal instruments are widely plagiarized, of course. We see no impropriety in one lawyer's adopting another's work, thus becoming the 'drafter' in the sense that he accepts responsibility for it.").

In her Opinion and Order, the District Judge cites a number of cases, including. Odom, *supra*, none of which involved the particular type of conduct at issue here. *See*, Opinion and Order at 20 and footnote 18. All of the cases cited by the Court involved filings which copied from Judicial Opinions or other legal sources without proper attribution. None involved copying from briefs filed by lawyers with whom counsel is collaborating in litigation involving substantially the same issues before other courts. Much less do they involve cases in which the client was seeking consolidation. Thus, the cases cited by the Court do not stand for the proposition that Plaintiff's counsel authorized copying from another brief in related litigation constitutes a violation of Model Rule 8.4 (c).

As set forth in the expert opinion of former Massachusetts Chief Bar Counsel,

- 24 -

Professor Arnold Rosenfeld, the Model Rules do not mention the word "plagiarism" or define it as being within the scope of Rule 8.4(c). *See* Docket No. 186-1 at pp. 4, 6. Thus, Professor Rosenfeld opines that the Plaintiff's counsel's copying of pleadings does not constitute a violation of Rule 8.4(c). Id.

At least two Bar Associations have issued Formal Opinions that concur with Professor Rosenfeld. They have specifically found that copying from another lawyer's brief without attribution is not necessarily deceitful *per se* nor in violation of Model Rule 8.4. *See*, Formal Opinion 2018-3, New York City Bar (July 13, 2018); Formal Ethics Opinion 2008-14, North Carolina State Bar Association (2008). The North Carolina State Bar Association's Formal Ethics Opinion 2008-14 pointedly held that "it is not an ethical violation when a lawyer fails to attribute or obtain consent when incorporating into his own brief, contract, or pleading excerpts from a legal brief, contract, or pleading written by another lawyer." It reasoned:

> Lawyers often rely upon and incorporate the work of others when writing a brief, whether that work comes from a law firm brief bank, a client's brief bank, or a brief that the lawyer finds in a law library or posted on a listserv on the Internet. By its nature, the application of the common law is all about precedent, which invites the re-use of arguments that have previously been successful and have been upheld. It would be virtually impossible to determine the origin of the legal argument in many briefs. Moreover, the utilization of the work of others in this context furthers the interests of the client by reducing the amount of time required to prepare a brief and thus reducing the charge to the client (citation omitted). It also facilitates the preparation of competent briefs by encouraging lawyers to use the most articulate, carefully researched, and comprehensive legal arguments.

A prior opinion by the New York State Bar Association ("NYSBA") is also instructive. The NYSBA discussed whether a lawyer could ethically follow the direction of an insurance carrier to rely on the insurance carrier's suggested third-party research service and "brief bank." *See* NYSBA Ethics Op. 721 (1999). Among other things, the State Bar concluded that the lawyer could ethically draw from the brief bank if the lawyer concluded, "in the exercise of independent professional judgment," that no additional work was necessary. Notably, the State Bar did not express any reservation about the contemplated undisclosed use of briefs authored by others as a potential violation of Rule 8.4(c).

Therefore, Plaintiff's counsel's copying of pleadings drafted by other lawyers in a related case involving substantially the same issues and same defendants, in the exercise of independent professional judgment, is standard practice in complex litigation wherein competent representation mandates thorough and uniform pleadings. Throughout the United States, legal practice has routinely and traditionally involved the exchange of model pleadings, briefs and other documents which lawyers copy and adapt to their own cases. As both Professor Rosenfeld and at least two Bar Associations who have addressed the issue agree, there is nothing inherently deceitful about this practice. It is in fact encouraged and fomented by law firms, professional associations and professional publications throughout the United States. Nothing in the Model Rules of Professional Conduct, and specifically in Rule 8.4(c), requires a lawyer to be original in

drafting pleadings or to abstain from recycling arguments made by others. On the contrary, the duty of competence articulated in Model Rule 1.1 suggests that such practices are to be encouraged. in order to ensure that the lawyer provides the maximum degree of benefits to the client.

## CONCLUSION

Based on the foregoing, Plaintiff requests that this Honorable Court of Appeals find that the statute of limitations was properly tolled and any other findings based on the present brief by the Municipality of San Juan.

For all that is submitted herein, Plaintiff-Appellant, Municipality of San Juan, respectfully requests that this Honorable Court REVERSE and REMAND the JUDGMENT entered on October 8, 2025 (Docket No. 301), the ORDERS entered on April 9 and May 7, 2025 (Docket Nos. 167 and 193) in the best interest of procedural and substantive justice.

In San Juan, Puerto Rico for Boston, Massachusetts, this 23rd day of March 2026.

Respectfully submitted,

**MUNICIPALITY OF SAN JUAN**
Plaintiff – Appellant
By its attorneys,

s/ David Efron
**DAVID EFRON**
USCA No. 10,106

- 27 -

**LAW OFFICES OF DAVID EFRON, P.C.**
**Attorneys for Plaintiff-Appellant**
PO Box 29314
San Juan, PR 00929-0314
Tel. (787) 753-6455/Fax (787) 758-5515

**Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ this brief contains **6551** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

☐ this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this brief has been prepared in a proportionally spaced typeface using **Microsoft Word for Office 365 MSO 2018** in **14 point proportionally spaced Times New Roman**, or

☐ this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

s/ David Efron
**DAVID EFRON**
USCA No. 10,106

Dated: March 23, 2026

I

No. 25-2035
# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

———————————————————

MUNICIPALITY OF SAN JUAN,

Plaintiff - Appellant,

v.

EXXON MOBIL CORP.; SHELL PLC, f/k/a Royal Dutch Shell PLC; CHEVRON CORP.; BP PETROLEUM, f/k/a Anadarko Petroleum Corp.; BHP GROUP LIMITED; RIO TINTO PLC; XYZ CORPORATIONS 1-100; JOHN AND JANE DOES 1-100,

Defendants - Appellees,

ARCH RESOURCES INC., f/k/a Arch Coal, Inc.; PEABODY ENERGY CORPORATION,

Defendants.

———————————————————

# CERTIFICATE OF SERVICE

———————————————

I, David Efron, HEREBY CERTIFY that on this same date I electronically filed the foregoing *BRIEF OF PLAINTIFF – APPELLANT* with the United States Court of Appeals for the First Circuit through the CM/ECF system, which will send notification of such filing to the parties therein registered to receive Notice.

s/ David Efron
David Efron, USCA No. 10,106
LAW OFFICES OF DAVID EFRON, P.C.
Attorneys for Plaintiff-Appellant
PO Box 29314
San Juan, PR 00929-0314
Tel. (787) 753-6455
Fax (787) 758-5515
Email: efron@davidefronlaw.com

Dated: March 23, 2026

II

No. 25-2035
# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

MUNICIPALITY OF SAN JUAN,

Plaintiff - Appellant,

v.

EXXON MOBIL CORP.; SHELL PLC, f/k/a Royal Dutch Shell PLC; CHEVRON CORP.; BP
PETROLEUM, f/k/a Anadarko Petroleum Corp.; BHP GROUP LIMITED; RIO TINTO PLC;
XYZ CORPORATIONS 1-100; JOHN AND JANE DOES 1-100,

Defendants - Appellees,

ARCH RESOURCES INC., f/k/a Arch Coal, Inc.; PEABODY ENERGY CORPORATION,

Defendants.

_____

## ADDENDUM TO APPELLANT'S BRIEF
_____

**David Efron**
**USCA No. 10,106**
**LAW OFFICES DAVID EFRON, PC**
**PO BOX 29314**
**San Juan, PR 00929-0314**
**Tel: (787) 753-6455**
**Fax: (787) 758-5515**

March 23, 2026

# **TABLE OF CONTENTS**

| **Doc.** | | **Page** |
|---|---|---|
| 1 | OPINION & ORDER, USDC Docket No. 167 | 1 |
| 2 | ORDER, USDC Docket No. 193 | 25 |
| 3 | OPINION & ORDER, USDC Docket No. 298 | 27 |
| 4 | JUDGMENT, USDC Docket No. 301 | 40 |
| 5 | NOTICE OF APPEAL, USDC Docket No. 302 | 41 |

I

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

THE MUNICIPALITY OF SAN JUAN,
PUERTO RICO,

     Plaintiff,

     v.

     Civ. No. 23-1608 (ADC)

EXXON MOBIL CORP., et al.,

     Defendants.

## OPINION AND ORDER

### I.    Introduction

This Opinion and Order should serve as a cautionary tale for all members of the bar. The Court faces a pair of deceptively simple procedural questions: should the Court strike a couple of untimely filed oppositions to several pending motions to dismiss[1], as well as an equally untimely opposition to a motion for judicial notice[2], because counsel for plaintiff was too busy with his other cases to meaningfully respond to e-mails from opposing counsel or to timely request an extension of time from the Court? Additionally, should the Court take corrective action on counsel's alleged plagiarism of another attorney's briefs in a related case? Beneath this veneer of simplicity, however, lie ethical principles which the Court finds were violated here, specifically, an attorney's duties of diligence and competence.

---

[1] *See* **ECF Nos. 28, 31, 32, 34, 36, 37, 39**.

[2] *See* **ECF No. 35**.

**1**

**Civil No. 23-1608 (ADC)** **Page 2**

Several motions that were recently pending on the Court's docket depended on a decision as to these questions. For the sake of brevity and efficiency, the Court advanced its rulings on those matters. *See* **ECF Nos. 158, 159, 160**. Ultimately, the Court's decision flowed directly from its examination of the consequences of the plaintiff's attorney's abdication of his ethical duties to his client and to the Court. At this point in the litigation, responsibility for this will be assessed properly without the Court penalizing the client, the Municipality of San Juan, for its attorney's misconduct. But the facts and circumstances examined below evince the need for corrective action.

## II.    Relevant Procedural Background[3]

On December 13, 2023, the plaintiff in this case, the Municipality of San Juan, Puerto Rico ("San Juan") filed a 241-page complaint against several oil industry defendants claiming damages from climate change-related events that it alleges were caused by the defendants' industrial activities throughout the years.[4] San Juan is Puerto Rico's capital city and its most

---

[3] The following background includes information detailed in several electronic communications submitted by the parties in response to the Court's August 28, 2024 Order, which read: "The parties are hereby ordered to submit all pertinent written communications between them that are referenced in the motions at ECF Nos. 41, 42, 44, 52, 63, 71, and 75, for the Court's consideration." **ECF No. 89**. However, the Court may only take into consideration defendants' exhibits because they were translated to English, whereas San Juan's exhibits are almost entirely in Spanish. *Compare* **ECF No. 99** *with* **ECF No. 98**; *see* 48 U.S.C. § 864; L. Civ. R. 5(c); *see also Kenyon v. Cedeno-Rivera*, 47 F.4th 12, 19 (1st Cir. 2022) (citing *Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008) for the rule that "the parties have an obligation to provide certified translations of any Spanish-language documents on which they rely.").

[4] The named defendants are Exxon Mobil Corp. ("Exxon"); Shell PLC ("Shell"); Chevron Corp. ("Chevron"); BP PLC ("BP"); ConocoPhillips Company ("Conoco"); Motiva Enterprises, LLC ("Motiva"); Occidental Petroleum ("Occidental"); BHP Group Limited ("BHP"); Arch Resources Inc. ("Arch Resources"); Rio Tinto PLC ("Rio Tinto"); and Peabody Energy Incorporated ("Peabody"). The complaint was voluntarily dismissed without prejudice as to

populous municipality.[5] However, it was not at the forefront of this significant legal effort. Little more than a year *before* San Juan filed its complaint, a group of around forty other Puerto Rico municipalities filed a putative class action complaint against the exact same group of defendants, which is pending before a sister Court in this District. *See* Compl., *Municipality of Bayamon, et al. v. Exxon Mobil Corp., et al.*, Civ. No. 22-1550 (SCC) (D.P.R. Nov. 22, 2022), ECF No. 1 (the "Municipalities' Case"). The municipalities there are represented by attorneys Luis V. Almeida-Oliveri of Milberg Coleman Bryson Phillips Grossman, LLC and Roy L. Mason of Smouse & Mason, LLC. For unknown reasons, San Juan decided to file a separate complaint against the same defendants for the same conduct and raising the same causes of action more than a year after its fellow municipalities, retaining its own counsel, attorney David Efron, for this task.[6]

San Juan's 241-page complaint is almost a word-for-word carbon copy of the original complaint filed in the Municipalities' Case.[7] That fact is significant here, but will be dealt with further below. For now, it is enough to say that the filing of this complaint activated the machinery of civil procedure, which sets deadlines for plaintiff to serve all named parties within

---

Arch Resources and Peabody on February 9, 2024. **ECF Nos. 6, 9**. Shell, BP, BHP, and Rio Tinto appeared in this case in the latter half of 2024, and were not part of the motion practice with which this Opinion and Order is primarily concerned. Accordingly, the term "defendants" as used collectively in this Opinion and Order shall refer primarily to Exxon, Chevron, Conoco, Motiva, and Occidental.

[5] According to the 2020 Decennial Census, San Juan's population is 342,259, or 10.5% of Puerto Rico's total population of 3,285,874.

[6] It is so far unclear why San Juan chose not to join the other municipalities in their class action.

[7] That complaint has since been amended. *See* Municipalities' Case, Civ. No. 22-1550, ECF No. 205.

ninety days of filing upon pain of dismissal, Fed. R. Civ. P. 4(m), and which provides the defendants with an opportunity to raise specific dispositive defenses by pre-trial motion, like those allowed in Fed. R. Civ. P. 12(b).

By December 28, 2023, San Juan had served or attempted to serve several, but not all, of the named defendants. These defendants then appeared before the Court on January 17, 2024, and requested an extension of time to file an answer or otherwise plead, stating that negotiations between the parties to stipulate to a comprehensive briefing schedule were ongoing. *See* **ECF No. 5**. These negotiations began with a set of e-mails sent by counsel for Chevron, Joshua Dick, to Attorney Efron on January 4 and 8, 2024, which went unanswered. *See* **ECF No. 99-1**. Per an e-mail sent by Chevron's co-counsel Roberto Quiñones on January 11, 2024, he had spoken with Attorney Efron two days earlier "on behalf of the defense group to discuss extending the time to respond to the complaint in order for the parties to discuss entering procedural stipulations similar to those entered in the [Municipalities' Case]." **ECF No. 99-2** at 2. Attached was a draft motion to extend the answer deadlines to March 4, 2024, and a draft stipulation for Attorney Efron's review. *Id.*, at 3-15. Attorney Efron agreed to the extension on behalf of San Juan on January 15, 2024. **ECF No. 99-4** at 4. The draft motion was the same motion that was then filed by several defendants on January 17, 2024 (**ECF No. 5**), which the Court granted. **ECF No. 7**.[8]

---

[8] Following the e-mail trail, it appears that even though counsel for Chevron was taking the lead in this discussion, San Juan had not yet served process on Chevron.

On February 21, 2024 (about a week and a half before the answer deadline expired), Attorney Quiñones again reached out via e-mail to Attorney Efron, attaching a revised briefing schedule. **ECF No. 99-4**. In this e-mail, Attorney Quiñones mentions that some defendants had not yet been served, including his client, Chevron. **ECF No. 99-4** at 2.[9] That complicated the mechanics of the proposed briefing schedule, because the idea was for the defendants to file "joint motions." *Id.* Presumably, the concern was that some defendants would not be able to join these motions to dismiss without waiving their defenses related to lack of process. Attorney Quiñones requested that Attorney Efron clarify when he would expect to have completed service on all defendants in order to "fill in the blanks in paragraph 5.a of the draft with the dates agreed upon for presenting the motions to dismiss, oppositions, and responses." *Id.*

Attorney Efron did not respond to the February 21 e-mail, so Attorney Quiñones sent a follow-up two days later, on February 23, 2024. **ECF No. 99-5** at 2. He again reiterated the request for an expected date of service on the remaining co-defendants, writing that defendants "needed this information to determine when the motions to dismiss will be presented and thus finalize the joint motion . . . ." *Id.* On February 26, Attorney Efron's secretary informed Attorney Quiñones that Attorney Efron was in a trial and would respond to the e-mail the next day. **ECF No. 99-6** at 2.

---

[9] The ninety-day term for San Juan to serve process on defendants for in Fed. R. Civ. P. 4(m) had still not expired but would have run on March 12, 2024.

Accordingly, on February 27, 2024, Attorney Efron finally replied to Mr. Quiñones, saying: "Sorry that I couldn't reply earlier, but I've been in a jury trial in a Federal court. You have the municipality of San Juan's authorization to file the motion as submitted." **ECF No. 99-7** at 2. Attorney Quiñones quickly replied by noting that his response did not address the matter of the expected date of completion of service on the remaining defendants, on which the proposed timeline for the filing of the motions to dismiss would depend. *Id.*

Two days later, on February 29, 2024, Attorney Quiñones again wrote to Attorney Efron, following up on his earlier message. **ECF No. 99-8** at 2. He attached a draft motion for extension of time to extend the defendants' deadline to answer the complaint or otherwise plead to March 25, 2024. *Id.* He explained that:

> The purpose of this additional extension is to give the parties the opportunity to complete their conversations regarding the joint motion that I sent you last week, proposing (as in the [Municipalities' Case]) a uniform schedule for presenting the motions to dismiss, oppositions, and responses. (As I explained in my email last Tuesday (see the message directly below), we need to know when you expect to have completed the services, to then determine the schedule that we're going to propose in this joint motion.)

*Id.* Attorney Efron acceded to the requested extension later that same day. **ECF No. 99-10** at 2. The extension of time was then filed and was later granted by the Court. **ECF Nos. 10, 13**.

Attorney Quiñones reached out to Attorney Efron on March 5, 2024 to continue discussing the briefing schedule. **ECF No. 99-10** at 1. Attorney Efron sent an email to Attorney Quiñones on March 6: "Your motion looks good to me. What date were you planning to put on it?" **ECF No. 99-11** at 2. Attorney Quinones responded that same day: "Depends on when you

expect to complete the services." *Id.* But Attorney Efron apparently failed to reply, so, twelve days later, Attorney Quiñones sent an email attaching the proposed briefing schedule and including proposed dates:

> I've attached the motion as revised to include the proposed dates for presenting the motions to dismiss (April 22), oppositions to the motions (July 22), and replies to the oppositions (September 20) – see paragraph 6.a. The defendants who have been served appear in the motion. I'd be grateful if you could confirm that we have your client's consent to present this motion. We'd like to present it as soon as possible given that the second extension granted by Judge Delgado expires next Monday.

*Id.* Due to Attorney Efron's continuing lack of response, Attorney Quiñones again followed up by e-mail on March 19. **ECF No. 92-12** at 2. Attorney Efron replied to Attorney Quiñones' follow-up that evening, telling Attorney Quiñones that he was "at trial in a federal jury case" and that he would not be "coming into the office." **ECF No. 99-13** at 2. For that reason, he asked Attorney Quiñones to give him "a couple of days to carefully look this over." *Id.*

On March 22, 2024, counsel for Chevron filed a motion for extension of time. **ECF No. 18**. Chevron requested, on behalf of all served defendants, to extend the deadline to answer or otherwise plead to April 8, 2025. *Id.* As opposed to its two prior requests for extension, this one did not state whether San Juan had consented to the extension, but only that "[p]laintiff's counsel recently informed [d]efendants he is in trial and unable to discuss the proposed schedule at present." *Id.*, at 2. The Court, again, granted the extension. **ECF No. 19**.

On April 2, 2024, Attorney Quiñones *again* wrote to Attorney Efron for his input on the proposed briefing schedule, re-attaching the document to this e-mail. **ECF No. 99-13** at 2.

Attorney Efron replied that same day, but to a different, previous e-mail sent on March 20 from Attorney Quiñones' co-counsel, Eduardo A. Zayaz-Marxuach, regarding the already approved request for an extension of time. **ECF No. 99-14** at 2. He said: "I'm in a jury trial in federal court. Give me a break." *Id.*

And so, on April 8, 2024, defendants filed a total of seven separate motions to dismiss the complaint on various grounds. *See* **ECF Nos. 28, 31, 32, 34, 36, 37, 39**. They also filed a request for the Court to take judicial notice of several news publications and scientific reports. **ECF No. 35**. Oppositions were due on April 22, 2024.

The response deadline came and went without any indication that San Juan intended to oppose the motions. Consequently, on April 26, 2024, defendants filed a motion to deem all of the above unopposed. **ECF No. 41**; *see* L. Civ. R. 7(b) ("Unless within fourteen (14) days after the service of a motion the opposing party files a written opposition to the motion, **the opposing party shall be deemed to have waived any objection to the motion**." (emphasis added)). Then, according to the e-mail records submitted by the parties, Attorney Efron reached out to Attorney Quiñones on April 29, 2024—seven days after the deadline to oppose expired and three days after receiving notice of the defendants' request to deem their motions unopposed—to inform him that he was "finally done with the trial and [was] catching up on everything," and to ask for defendants' consent to an extension of time to file San Juan's responses. **ECF No. 99-15** at 3. Attorney Quiñones responded by saying he would need to discuss the issue with the other

defendants' counsels and that he was not sure he could have a response by April 30, as requested by Attorney Efron. *Id.*, at 2.

San Juan went ahead and filed a request for extension of time up until May 30, 2024, to oppose the defendants' motions. **ECF No. 42**. The request was based on Attorney Efron's participation in the referenced jury trial and his subjective belief that a briefing schedule had been agreed to: "What the undersigned was expecting was a briefing schedule which the parties had been discussing and not for defendants to go directly into dispositive motions." *Id.*, at 1. Predictably, the defendants opposed the request and put forth their version of the story on record, summarized as follows:

> In short, over the course of three months, Defendants sought repeatedly to reach an agreement with Plaintiff concerning a comprehensive briefing schedule and stipulations. They were clear in their March 22 motion that, absent agreement on the final proposal before expiration of the April 8 deadline, they would be filing the Motions to Dismiss on that date. But, despite their efforts, Defendants did not receive confirmation of Plaintiffs' acceptance of their final proposal by April 8 and therefore were required to file the Motions to Dismiss as the March 22 motion had provided.

**ECF No. 44** at 4. However, they declined to take a position on whether the extension should be granted and expressed a willingness to reach future agreements with Attorney Efron on "a more comprehensive briefing schedule and stipulations . . . ." *Id.*, at 4-5.

On May 29, 2024, San Juan filed an opposition to the motion requesting judicial notice, which it titled "*Plaintiff's Omnibus Response in Opposition to Defendants' Joint Motion for Judicial Notice.*" **ECF No. 63**. Notably, there are no references in the opposition to the docket entry for

defendant's request for judicial notice. There is, however, a reference to "Defendants' Second Joint Motion for Judicial Notice." *See id.*, at 4. There is no such filing in this case's docket—but there is one in the Municipalities' Case. *See* Municipalities' Case, Civ. No. 22-1550, ECF No. 238. Separately, on June 13, 2024, San Juan filed a ninety-four-page response titled "*Plaintiff's Omnibus Response in Opposition to Defendants' Motions to Dismiss for Failure to State a Claim (Docket Entries 28, 34, 36, 37, 39)*." **ECF No. 72**.[10] That same day, San Juan filed a thirty-nine-page opposition to the motion to dismiss at **ECF No. 31** filed jointly by Conoco, Motiva, Exxon, Occidental, and Chevron. **ECF No. 73**.[11]

## III.   Implications of Attorney Efron's Actions and Omissions

### A.   Attorney Efron's failure to attend to case matters.

As per the above review, several defendants, through the efforts of counsel for Chevron, attempted in good faith to reach procedural stipulations with Attorney Efron regarding their then-contemplated motions to dismiss, aiming to ease the burden on all parties and the Court by streamlining page limits and response deadlines. During this time, defendants diligently filed extensions of time with the Court to file their responsive pleadings or motions and apprised it of the status of its attempted discussions with the other side. Behind the scenes, however, no agreement had been finalized on the briefing schedule for the motions to dismiss because San

---

[10] Missing from the title is reference to Exxon's motion to dismiss filed by Exxon at **ECF Nos. 32**. The motion, however, is referenced further below in the response. *See* **ECF No. 72** at 60, 71.

[11] Like San Juan's complaint and the response to the motion requesting judicial notice, this filing seems to have been scanned and is not in a digitally searchable format. This is in contrast to the response at **ECF No. 72**.

Juan had not moved to serve the remaining defendants in this case. Once the time to serve them expired without action by San Juan, defendants then proposed concrete dates for the motion to dismiss briefing schedule. But Attorney Efron was too busy with other matters to respond—he could not express his agreement with the briefing schedule prepared by defendants because he was in the midst of a federal jury trial.

Attorney Efron's professional conduct before this Court is governed by the American Bar Association's Model Rules of Professional Conduct ("Model Rules"), made applicable by L. Civ. R. 83E(a). As counsel for San Juan, Attorney Efron has a duty of competence to his client, which requires of him "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Model Rules of Pro. Conduct r. 1.1 (Am. Bar. Ass'n 2025). In major litigation, of which this case has all the trappings of becoming, an attorney's duty of competence requires a higher level of attention and preparedness "than matters of lesser complexity and consequence." Model Rules of Pro. Conduct r. 1.1 cmt. 5. Add to this Attorney Efron's duty of diligence, which requires him to "act with reasonable diligence and promptness in representing a client." Model Rules of Pro. Conduct r. 1.3. This necessarily implies an obligation to control his workload "so that each matter can be handled competently." Model Rules of Pro. Conduct r. 1.3 cmt. 2.[12]

---

[12] Puerto Rico's Canons of Professional Ethics contain a similar obligation: "It would be improper for a lawyer to assume professional representation when he is conscious that he cannot render suitable, competent service and that he cannot prepare himself properly without it entailing unreasonable expenses or delay to his client, or to the administration of justice. . . ." PR. Laws Ann. t. 4 Ap. IX, § 18a. And although these Canons "do not govern the

The fact that Attorney Efron was in the middle of a federal jury trial (a claim which the Court has no reason to doubt) is no excuse for his failure to diligently attend to pending matters in this case. Attorney Efron's "expectation" that a briefing schedule was in place between the parties is belied by the e-mail record.[13] Attorney Efron had ample and repeated notice that Attorney Quiñones needed an answer as to his expected date for completing service on the remaining defendants before finalizing and filing the briefing schedule.  It was unreasonable for Attorney Efron to assume, or "expect," that the defendants would continue to withhold filing their motions to dismiss absent a substantive response to Attorney Quiñones' repeated queries.

Attention to other matters in his book of business did not relieve Attorney Efron from his duty to exercise a minimum degree of diligence to make sure that he complied with this case's deadlines. Certainly, once the motions were filed on April 8, 2024, counsel could have taken five minutes from his day, regardless of whether he was at trial, to check his e-mail and examine the electronic notifications that he received for the **nine** motions filed that day. Any attorney, whether straight out of law school or a courthouse veteran, would have been curious as to what was going on in the docket. Attorney Efron had fourteen days to draft a one or two-page motion

---

conduct of attorneys in federal court, the *raison d'etre* of both the Model Rules and the Puerto Rico Canons of Ethics is akin—to preserve the integrity of the legal profession. As such, courts in this District look to the Puerto Rico Canons of Professional Ethics and their interpretive jurisprudence for illustrative purposes." *In re Pena*, No. 18-04009 (ESL), 2024 WL 3912827, at *6 (Bankr. D.P.R. Aug. 22, 2024) (cleaned up).

[13] That is, assuming (generously) that this was his "expectation." From the record, it is easily inferable that Attorney Efron expected that this entire case would grind to a halt until his busy schedule cleared up. But absent an agreement with the defendants, which he patently failed to reach, there was no reasonable basis to hold that belief. Procedural fairness does not tolerate that much hubris.

for extension of time—much like the barebones one he filed on April 30, 2024. **ECF No. 42**. That would have at least put the Court and the defendants on notice that Attorney Efron had difficulties attending to the deadlines in this case. But he failed to do so, exposing his client to inadvertently waiving its defenses to the dispositive motions.

"Counsel 'have an obligation to remain informed about the status of their cases and comply with applicable scheduling orders issued by the court.'" *Pimentel-Soto*, 957 F.3d 82, 85 (1st Cir. 2020) (quoting *United States v. Romero-López*, 661 F.3d 106, 108 (1st Cir. 2011)). "When electronic case filing is utilized . . . counsel needs to monitor the docket for electronic filings." *Romero-López*, 661 F.3d at 108; *see also id.* (finding that the "attorney's failure to monitor for electronic notices constituted a violation of this obligation.").

The Court finds that Attorney Efron's failure to respond to defense counsel's repeated attempts to reach an agreement on a briefing schedule, and his subsequent failure to timely oppose the filed motions or request an extension of time, violate his duties of diligence and competence and amount to attorney misconduct.

## B.    Attorney Efron's copycat filings.

Unfortunately, this is not the end of the matter. This case also presents an astonishing example of plagiarism in the legal profession.

From early on in this case, the defendants have pointed to substantial similarities between many of the filings made by San Juan here and those filed by the plaintiffs in the Municipalities' Case. Despite being on notice of defendants' plagiarism accusations at almost every step of the

way, San Juan did not respond to these allegations in any meaningful way. Some of the instances of plagiarism are summarized below.[14]

### 1. The plagiarized complaint at ECF No. 1.

San Juan's 241-page complaint is almost a carbon copy of the original complaint filed a year before in the Municipalities' Case by different, unrelated counsel. *Compare* **ECF No. 1** *with* Municipalities' Case, Civ. No. 22-1550, ECF No. 1. Just a review of the first couple of paragraphs of the complaint is enough to warrant suspicion. Apart from substituting "plaintiffs" for "plaintiff" (*id.*, at ¶ 2), occasionally making reference to "the Municipality of San Juan" instead of the collective municipalities, sprinkling some adverbs such as "incredibly" at the beginning of a paragraph (*id.*, at ¶ 3), and breaking a paragraph in two (*id.*, at 6, ¶ 5), the language, footnotes, and citations are identical to the corresponding paragraphs in the complaint filed in the Municipalities' Case.

And these suspicions are well-founded. As defendants point out in their joint motion to dismiss, the complaint in this case is rife with examples of plagiarism:

> The complaints include identical typos, *e.g.*, *compare* Compl. ¶ 11 (alleging all injuries were caused "as a result of the Defendant's [singular] acts and omissions") *with* Bayamón Compl. ¶ 11 (same); *compare* Compl. ¶ 373 ("Exxon continued [to] publish") *with* Bayamón Compl. ¶ 297 (same), allegations that are irrelevant to non-class action complaints, *e.g.*, Compl. ¶ 26 (noting San Juan's experience in the 2017 Atlantic Hurricane Season as "representative of the remaining 77 Municipalities in the Commonwealth of Puerto Rico"); there are identical cross-

---

[14] From the Court's estimation, the five briefs it has been able to identify as plagiarized (in no small part thanks to defendants' motions), run up to a total of approximately 440 pages. Some of these briefs are not text-searchable, as they appear to be scanned copies uploaded to CM/ECF. For these reasons, the Court is impeded from listing all instances of the suspected plagiarism, but a sample is enough to reach a conclusion on the matter.

> references that are not updated for this Complaint, *e.g.*, *id.* ¶ 163; repeated references to Plaintiff as "Municipalities" (plural), *e.g.*, *id.* ¶¶ 65, 137, 147, 153, 373, 555, 569, 586, 618; references to "Exhibit[s]" "attached hereto" and a "RICO Case Statement" that this Plaintiff never filed or served, *id.* ¶¶ 177-78, 420, 696-97; and apparent artifacts of a PDF-to-Text transcription that was not thoroughly reviewed, such as footnote errors, *e.g.*, *id.* ¶¶ 185-86 & nn. 177-79 (misnumbered footnotes); *id.* p. 57, n.186 (footnote call omitted from text), and odd textual errors, *e.g.*, *id.* ¶¶ 412 ("Shell al o formally withdrew"), 702 ("would inevitably re ult"), 776 ("fuel product were u ed"), *id.* at VII.D ("Fourth Cause of Actio11").

**ECF No. 34** at 18, n.1. Add to this that the complaint here is not a putative class action complaint. Those allegations are present in the Municipalities' Case but were removed from San Juan's complaint. *Compare* **ECF No. 1** at 191, ¶¶ 609, 610 *with* Municipalities Case, Civ. No. 22-1550, ECF No. 1 at ¶¶ 633-648. It is (almost) inexplicable, then, why San Juan claims to be "validating" a climate change prediction "by bringing this class action" when it disclaimed having brought any such action. **ECF No. 1** at 7.

Evidently, San Juan's complaint is a poorly plagiarized version of the complaint in the Municipalities' Case.

### 2. The plagiarized motion for leave to file omnibus opposition at ECF No. 52.

In response to the motions to dismiss, as well as the motion requesting judicial notice at **ECF No. 35**, San Juan filed a motion requesting leave to file three omnibus oppositions. **ECF No. 52**. As it relates to the motion requesting judicial notice, the choice of title is odd (to say the least), given that there is only one such motion on the docket. However, San Juan refers to the "3) Motion requesting that the Court take judicial notice of documents (filed jointly and by an

individual defendant).” *Id.*, at 2. It accordingly requested “leave to file: . . . 3) an Omnibus

Opposition to Defendants’ Motions for Judicial Notice . . . .” *Id.* at 2, 4.

> This oddity, however, is explained by the defendants:
>
> On April 17, 2024, Plaintiffs in the Bayamón case moved for leave to file omnibus oppositions to Defendants’ motions to dismiss and related motions there. *See Plaintiffs’ Motion for Leave to File Omnibus Oppositions*, Dkt. No. 270 (“*Bayamón* Pls.’s Motion”) in the Bayamón case. Here, Plaintiff’s counsel copied large sections of that motion nearly word-for-word, many aspects of which obviously have no application in this case. *Compare* Dkt. No. 52, ¶¶ 2–5, 7–8 *with Bayamón* Pls.’s Motion ¶¶ 5–8, 10–11. Perhaps most egregious, the Motion for Leave asserts that this case involves multiple motions for judicial notice “filed jointly and by an individual defendant” and therefore moves the Court for leave to file “an Omnibus Opposition to Defendants’ Motions for Judicial Notice.” Dkt. No. 52, ¶ 5. But—in this case, unlike in *Bayamón*—Defendants filed only one joint motion for judicial notice and no Defendant filed an individual motion for judicial notice. *See Defendants’ Request for Judicial Notice*, Dkt. No. 35; *contra Bayamón* Pls.’s Motion at ¶ 5; Dkt. Nos. 238, 241 (two motions for judicial notice).

**ECF No. 67** at 8.

A review of the motion in question confirms the defendants’ claims and lends credence

to their concern that San Juan and/or Attorney Efron’s “litigation strategy appears to be to

plagiarize from and ride the coattails of the earlier-filed Bayamón case.” *Id.*, at 9.

### 3. The plagiarized “omnibus” opposition to the request for judicial notice at ECF No. 63.

Following on the heels of the motion for leave (and defendants’ calling out of its

plagiarized nature), San Juan proceeded to file its “omnibus” opposition to the motion

requesting judicial notice. **ECF No. 63**. No mention was made as to defendants’ accusations of

plagiarism. In fact, this eight-page motion is a copycat brief, ripped from the one filed in the

Municipalities' Case. *Compare* **ECF No. 63** *with* Municipalities' Case, Civ. No. 22-1550, ECF No. 282. Attorney Efron evidently invested *some* minimal effort in adapting the motion to the facts of this case, changing some sentences to, for example, recognize that defendants had made the same request for judicial notice in the Municipalities' Case. *Compare* **ECF No. 63** at 4 ("Defendants show their hand for this vague request in a similar motion filed in a similar case 'establish that the statute of limitation had passed.'") *with* Municipalities' Case, Civ. No. 22-1550, ECF No. 282 at 5 ("Finally, Defendants avail us their reasoning for this vague request – to 'establish that the statute of limitations had passed.'"). He also substituted some words for synonyms. *Compare*, *e.g.*, **ECF No. 63** at 6 ("Judicial notice should not be permitted to be used as a **sword** for dismissal") *with* Municipalities' Case, Civ. No. 22-1550, ECF No. 282 at 6 ("Judicial notice should not be permitted to be used as a **shotgun** for dismissal") (emphasis added).[15]

However, aside from the specific examples above, the legal reasoning and argumentation used in San Juan's motion is an almost an exact copy of that employed by its counterpart in the Municipalities' Case. All of this shows that the "omnibus" opposition was, indeed, plagiarized as the defendants contend. *See* **ECF No. 67** at 8 n.6.

---

[15] Curiously, San Juan's motion fails to cite to the complaint's allegations, whereas the one filed in the Municipalities' Case does. *Compare, e.g.*, **ECF No. 63** at 7 (". . . which they seek to prove through the current request for judicial notice of news articles and non-governmental reports.") *with* Municipalities' Case, Civ. No. 22-1550, ECF No. 282 at 7 (". . . which they seek to prove through the current request for judicial notice of news articles and non-governmental reports. Am. Compl. ¶¶ 297-579."). One would presume that the attorney who had drafted the complaint would be able to insert this citation without issue.

### 4. The plagiarized responses to the motions to dismiss at ECF Nos. 72 and 73.

As to San Juan's oppositions to the motions to dismiss, these are likewise copycat briefs ripped from those filed in the Municipalities' Case. Like in the complaint, Attorney Efron tried to eliminate references to class actions, but he failed to thoroughly purge these references from San Juan's briefs and some survived. *See, e.g.*, **ECF No. 71** at 21 ("**Plaintiff brings this litigation as a class action**. . . . This applies both for **the Plaintiff who were** [sic] part of the original lawsuit and for all potential Plaintiff who are members of the class, including those who were unaware of the proceedings." (emphasis added)). [16] Defendants likewise raised an accusation of plagiarism as to these briefs (**ECF No. 75** at 5-6), which has gone unanswered by San Juan. From what the Court is able to see, those parts of the briefs filed in the Municipalities' Case that were not omitted by Attorney Efron are virtually identical in legal and factual reasoning.

### 5. The plagiarized Racketeering Case Statement at ECF No. 76.

Finally, to add insult to ethical injury, San Juan's unsolicited "Racketeering Case Statement," filed on June 25, 2024 (**ECF No. 76**), is also taken largely verbatim from the amended statement filed in the Municipalities Case. *See* Municipalities Case, Civ. No. 22-1550, ECF No. 206.

---

[16] As with San Juan's "omnibus" opposition to the motion requesting judicial notice, there are exactly zero citations to the allegations in the complaint, only unspecific references. *See*, *e.g.*, **ECF No. 71**. On the other hand, the briefs filed in the Municipalities' Case are overflowing with such references. This further deepens the Court's suspicion that Attorney Efron had little (if any) hand in drafting, researching, or otherwise preparing the complaint or the oppositions to the motions to dismiss, and that he rather copied them wholesale from those of the Municipalities' Case to use here, expending the bare minimum effort to adapt them to San Juan's procedural and substantive circumstances.

Notably, the plaintiffs in the Municipalities' Case had originally filed a racketeering statement alongside their original complaint. *Municipalities' Case*, Civ. No. 22-1550, ECF No. 4. When they amended their complaint on November 3, 2023, they also amended their racketeering statement. *Id.*, Civ. No. 22-1550, ECF Nos. 205, 206. As a result of these amendments, a new defendant, the American Petroleum Institute, was added to that case, and reference to it is made in the amended statement. *See, e.g.*, *Municipalities' Case*, Civ. No. 22-1550, ECF No. 206 at 12 (referring to an action plan "written by Defendant American Petroleum Institute"), 27 ("The following persons conducted the association-in-fact enterprise: . . . AMERICAN PETROLEUM INSTITUTE . . ."), and 28 (referring to a "workshop held at the American Petroleum Institute"); *see also, e.g., id.*, at 2, 3, and 10 (including the American Petroleum Institute in the list of named defendants and raising allegations directed at it as "API"). San Juan, which filed its complaint in December of 2023, waited half a year to file its statement in this case, and only after several motions to dismiss had already been filed. Its racketeering statement includes the same references to the American Petroleum Institute, even though it is not a defendant in this case. *Compare id. with* **ECF No 76** at 2, 3, 10, 12, 27, 28.[17] From what the Court can gather from the rest of San Juan's statement, it seems substantively identical to the amended statement of the plaintiffs in the Municipalities' Case.

---

[17] The Court can only speculate as to why Attorney Efron waited so long to file the racketeering statement here, given that his modus operandi has been to copy the filings in the Municipalities' Case. Whether it was his prior professional commitments or not, the original omission and the timing of the subsequent filing speak volumes.

Like in the previously detailed instances, defendants brought many of these examples to the Court's attention. *See* **ECF No. 77** at 2-4. And likewise, San Juan did not submit any meaningful rebuttal.

In sum, probably more so than the other briefs discussed above, this statement seems to be close to 100% plagiarized.

### 6. Attorney Efron's plagiarism constitutes attorney misconduct and an ethical violation.

The touchstone of plagiarism is lack of attribution. As in law school, passing someone else's work off as one's own is wrong as a matter of fact and professional ethics. *See Odom v. Syracuse City Sch. Dist.*, No. 519CV835TJMATB, 2020 WL 1689879, at *8 (N.D.N.Y. Apr. 7, 2020) ("Passing off another's ideas as one's own is unacceptable in a first-year college class, and can lead to failing grade or even expulsion. Doing so while engaged in the professional practice of law is worse, and is both feckless and embarrassing."). Pursuant to Model Rule 8.4(c) "[i]t is professional misconduct for a lawyer to: . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation," and "[t]he essence of plagiarism is deceit." Model Rules of Pro. Conduct r. 8.4(c); *Ayala v. Lockheed Martin Corp.*, 67 V.I. 290, 314 (Super. Ct. 2017) (quoting *In re Lamberis*, 443 N.E.2d 549, 552 (Ill. 1982)). Courts have not wavered in admonishing or even sanctioning litigants who copy whole sections of judicial opinions without providing

attribution.[18] They have done the same in relation to plagiarism of articles written by scholars or legal professional.[19] Court have also called out the copy-pasting of briefs in one case for use in another without due care to adapt the same to the circumstances of the case.[20]

Here, Attorney Efron lifted not only the entire theory of San Juan's case from the Municipalities' Case but went so far to use virtually the very same words and ideas, usurping

---

[18] *See, e.g., United States v. Lavanture*, 74 F. App'x 221, 224 (3d Cir. 2003) ("[I]t is certainly misleading and quite possibly plagiarism to quote at length a judicial opinion (or, for that matter, any source) without clear attribution."); *Matthews v. Kijakazi*, No. 2:21-CV-193 RLM-JPK, 2022 WL 3025887 (N.D. Ind. Aug. 1, 2022) ("[P]resenting another's analysis as one's own raises questions about plagiarism and professional ethics."); *Rosselló v. Avon Prods., Inc.*, No. CIV. 14-1815 JAG, 2015 WL 5693018, at *2 (D.P.R. Sept. 28, 2015) ("Plaintiffs plagiarized federal court decisions without any attribution in their Opposition Brief. . . . Plaintiffs' plagiarism is dishonest, unprofessional, and potentially sanctionable."); *Ramírez Lluveras v. Pagán Cruz*, No. CV 08-1486 (FAB), 2010 WL 11679649, at *4 n.5 (D.P.R. Aug. 5, 2010) ("The Commonwealth should try to indicate clearly with proper quotation marks which words are its own and which words are someone else's, lest it be accused of plagiarism - often found to constitute deceit under many codes of attorney ethics."); *Denton v. Rievley*, No. 1:07-CV-211, 2008 WL 4899526, at *2 n.2 (E.D. Tenn. Nov. 12, 2008) ("Counsel's assertion that large amounts of text can be copied without attribution is incorrect."); *Venesevich v. Leonard*, No. CIV A 1:07CV2118, 2008 WL 5340162, at *2 n.2 (M.D. Pa. Dec. 19, 2008) (strongly rebuking attorney who had plagiarized a significant portion of a brief in opposition to a motion to dismiss from uncited judicial opinions and finding that such actions were professional misconduct in the form of misrepresentation); *Álamo v. Commonwealth of Puerto Rico*, No. CIV. 05-1955 (JAF), 2006 WL 1716422 (D.P.R. June 19, 2006) ("The brief that Plaintiff's counsel . . . 'wrote' for his client in this regard, however, constitutes nothing more than seven pages of text copied nearly word-for-word from the United States Supreme Court's opinion in *Tennessee v. Lane*, 541 U.S. 509 (2004), without even one citation to that case. This plagiarism, for which we can only guess [plaintiff's counsel] actually billed his client, is unacceptable."); *Pagán Vélez v. Laboy Alvarado*, 145 F. Supp. 2d 146 (D.P.R. 2001) ("In fact, by our estimation, approximately sixty-six percent of the brief is a verbatim reproduction of . . . Judge Casellas' Opinion and Order. This behavior is reprehensible.").

[19] *See, e.g., Bogar v. Szeles*, No. 2:23-CV-09189-AB-SSC, 2024 WL 4406788, at *2 (C.D. Cal. May 6, 2024) (". . .[d]efendants directly copied about 5 pages of text, without attribution, from 5 different secondary sources, including law review articles, Wikipedia, a Congressional Research Service paper, and a Guide for Judges from the Federal Judicial Center. . . . In response to Counsel's apparent belief that plagiarism is fine, and to deter such conduct in the future, the Court admonishes counsel for the plagiarism reflected in his opening brief."); *Liberty Towers Realty, LLC v. Richmond Liberty, LLC*, 569 B.R. 534, 541 n.6 (E.D.N.Y. 2017) (admonishing attorney for committing plagiarism where he "directly copi[ed] pages of the article without attribution.").

[20] *See, e.g., In re Mundie*, 453 F. App'x 9, 10 (2nd Cir. 2011) (publicly reprimanding attorney who "incorporate[d] portions of a brief from a different case without making necessary changes."); *In re Summit Fin., Inc.*, 634 B.R. 376, 378-80 (Bankr. C.D. Cal. 2021) (discussing whether it is plagiarism to "copy[] and past[e] significant text from another law firm's pleading into your own . . ., and even if not, is it ethical?").

the thought processes and legal theories a client hires an attorney to develop and perform. The

Court finds that this conduct runs afoul not only of Attorney Efron's duty of competence to his

client, but also his duty of candor to the Court. *See* Model Rules of Pro. Conduct r. 8.4(c) ("It is

professional misconduct for a lawyer to: . . . engage in conduct involving dishonesty, fraud,

deceit or misrepresentation"). To be clear, the misconduct here is not merely following a legal

theory used by other parties or attorneys in another case. Neither is this an instance of using a

template or a standard form document. The misconduct is taking another lawyer's work for a

different client, filing it verbatim in this case—apparently without due review or regard for the

client's specific circumstances—and on top of all that, doing so without attribution. All of this

taken together amounts to misconduct.

Attorney Efron's actions also raise concerns about his compliance with Fed. R. Civ. P. 11.

"Rule 11(b) instructs that an attorney certifies that what he or she presents to the court is formed

from an inquiry that is reasonable under the circumstances." *Zell v. Ricci*, 957 F.3d 1, 19 (1st Cir.

2020). The attorney's certification is to the effect that:

> (1) it is not being presented for any improper purpose, such as to harass, cause
> unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law
> or by a nonfrivolous argument for extending, modifying, or reversing existing law
> or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified,
> will likely have evidentiary support after a reasonable opportunity for further
> investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(1)-(3). A violation of Rule 11(b) may entail sanctions upon motion or on the court's own initiative. Fed. R. Civ. P. 11(c).

Taking another attorney's work product without attribution, adopting it wholesale as the foundation of your client's case, and subsequently submitting plagiarized briefs certainly would throw any attorney's Rule 11(b) certification into serious doubt. Here, that is exactly what Attorney Efron did, and it should merit either the imposition of monetary sanctions, disciplinary action, or both.

## IV.  Conclusion

As Judge Fusté wrote more than twenty years ago:

It is well established that federal courts possess those inherent powers which "are necessary to the exercise of all others." *United States v. Hudson,* 11 (7 Cranch) U.S. 32, 34, 3 L.Ed. 259 (1812). Part of the court's inherent power is the authority to sanction counsel for misconduct and to "assess expenses . . . against counsel who willfully abuse [the] judicial process." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *see also Ramos Colon v. United States Attorney for Dist. of P.R.,* 576 F.2d 1, 3 (1st Cir. 1978) (quoting *Flaksa v. Little River Marine Constr. Co.,* 389 F.2d 885, 888 (5th Cir. 1968) ("[T]he inherent power of the court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it.")); *United States v. Kouri–Pérez,* 8 F.Supp.2d 133, 140 (D.P.R. 1998) (reprimanding defense counsel for inappropriate behavior and imposing monetary fine of $4,000), *appeal dismissed,* 187 F.3d 1, 14 (1st Cir. 1999).

*Pagán Vélez*, 145 F. Supp. 2d at 160.

Under both its inherent authority to govern the conduct of proceedings before it and its authority under Fed. R. Civ. P. 11(c)(3), the Court is empowered to sanction Attorney Efron for his failure to exercise reasonable diligence in this case and for engaging in plagiarism. Therefore,

Attorney Efron is **ORDERED TO SHOW CAUSE**, in writing, within fifteen days, why he should not be monetarily sanctioned in the amount of $7,000 for his untimely filings and lack of diligence in the management of case deadlines. With regards to the matter of plagiarism, the Court considers that a monetary sanction on its own would be insufficient to address the seriousness of the circumstances. Accordingly, the Court will be issuing a separate order to address that issue.

Finally, the Clerk of the Court is instructed to provide notice of this Opinion and Order to Mayor Miguel Romero and the Honorable Gloria Escudero Morales, the President of the Municipal Legislature of San Juan.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 9th day of April, 2025.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**

24

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

THE MUNICIPALITY OF SAN JUAN,
PUERTO RICO,

     Plaintiff,

     v.

EXXON MOBIL CORP., et al.,

     Defendants.

Civ. No. 23-1608 (ADC)

## ORDER

The Court hereby **NOTES** attorney David Efron's motion in compliance at **ECF No. 186** with its Order to Show Cause why he should not be monetarily sanctioned for his untimely filings and lack of diligence in the management of case deadlines. *See* **ECF No. 167**. The motion, however, does not contain any compelling justification or excuse for his omissions and conduct, which is laid out in detail in the Court's April 9, 2025 Opinion and Order and supported by the materials submitted on record. The Court therefore **ORDERS** attorney David Efron to pay **$7,000.00** as a sanction. **Payment due May 30, 2025.**

In addition, the Court notes that the motion in compliance is in good measure dedicated to addressing the Opinion and Order's separate findings of plagiarism. As attorney Efron himself acknowledges, a separate procedure has been opened to address that matter, so his

**25**

position will not be considered here. If he has not done so, he should submit any arguments to

the judicial officer presiding over that separate proceeding.

    **SO ORDERED**.

    At San Juan, Puerto Rico, on this 6th day of May, 2025.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

THE MUNICIPALITY OF SAN JUAN,
PUERTO RICO,

      **Plaintiff,**

      **v.**

EXXON MOBIL CORP., et al.,

      **Defendants.**

**Civ. No. 23-1608 (ADC)**

**OPINION AND ORDER**

Pending before the Court are a series of dispositive motions. **ECF Nos. 28, 31, 32, 34, 36, 37, 39, 119, 120, 121, 122, 123, 148, 149**.[1] The defendants[2] in this case seek the dismissal of the Municipality of San Juan's ("San Juan") fourteen-count complaint filed on December 13, 2023. **ECF No. 1**. The complaint claims that the defendants, by means of their production, sale, and marketing of carbon and fossil-fuel products, caused damages to San Juan and engaged in: common law consumer fraud; conspiracy to commit common law consumer fraud and deceptive businesses practices; misleading practices and advertisement; violations of the

---

[1] Pending also is a motion for the Court to take judicial notice of several reports and news publications. **ECF No. 35**.

[2] The named defendants are Exxon Mobil Corp. ("Exxon"); Shell PLC ("Shell"); Chevron Corp. ("Chevron"); BP PLC ("BP"); ConocoPhillips Company ("Conoco"); Motiva Enterprises, LLC ("Motiva"); Occidental Petroleum ("Occidental"); BHP Group Limited ("BHP"); Arch Resources Inc. ("Arch Resources"); Rio Tinto PLC ("Rio Tinto"); and Peabody Energy Incorporated ("Peabody"). The complaint (**ECF No. 1**) was voluntarily dismissed without prejudice as to Arch Resources and Peabody on February 9, 2024. **ECF Nos. 6, 9**. The Court will refer to Exxon, Shell, Chevron, BP, Conoco, Motiva, Occidental, BHP, and Rio Tinto collectively as "defendants" throughout this Memorandum and Order.

**27**

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(a), (b), (c) and (d) ("RICO"); antitrust violations pursuant to 15 U.S.C.§ 1 *et seq.* ("Clayton Act"); public nuisance pursuant to P.R. Laws Ann. t. 32, § 2761; failure to warn and design defects, for which they are subject to strict liability; negligent design defects; private nuisance pursuant to P.R. Laws Ann. t. 32, § 2761, and unjust enrichment. *See id.*, at 191-239. To put it in general terms, San Juan alleges that the defendants have been aware that their carbon and fossil-fuel activities cause the intensification of catastrophic weather phenomena, such as the hurricanes Irma and María that ravaged Puerto Rico in September of 2017, and have tried to conceal this through a coordinated campaign of misinformation.

### A. The Municipalities' Case and the Reports and Recommendations.

As explained elsewhere (*e.g.*, **ECF Nos. 64, 167**), this case is a copycat lawsuit of another case in the docket of Hon. Judge Sylvia L. Carreño-Coll. *See Mun. of Bayamón, et al. v. Exxon Mobil Corp.*, Case No. 22-cv-1550 (SCC) (the "Municipalities' Case"). That case involved virtually the same defendants, the same causes of action, the same factual allegations, and the same claims for relief as the case of caption.[3] San Juan has admitted as much in a filing before this Court and in two motions for consolidation filed in the Municipalities' case. *See* **ECF Nos. 65, 90, 280**.[4]

---

[3] The only additional party in the Municipalities' Case is the American Petroleum Institute, which was added upon the filing of an amended complaint on November 3, 2023.

[4] For example, in response to this Court's Order at **ECF No. 64** inviting the parties to express themselves on the possible consolidation of this case with the Municipalities' Case, San Juan's position was that "this action involves the same factual and legal questions as those in" the Municipalities' Case. **ECF No. 65**. In addition, on August 29,

**28**

In that case, District Judge Carreño referred several motions to dismiss to the Hon. Magistrate Judge Héctor L. Ramos-Vega for a Report and Recommendation ("R&R"). These motions contained largely the same arguments as those filed in this case.[5] San Juan's oppositions to these motions follow the oppositions filed in the Municipalities' Case. *See* **ECF Nos. 72, 73,**

---

2025, San Juan informed the Court that it had formally sought consolidation in the Municipalities' Case and summarized its reasons thusly:

> [S]uccinctly put:
>
> a. The two cases involve common questions of law and liability.
> b. The two cases involve common questions of fact.
> c. Judicial convenience and economy by not wasting judicial resources by having two judges rule o[n] the same issues and eventually try two separate cases.
> d. Avoid contradictory rulings.
> e. The dispositive motions, all still pending in both cases, are almost identical.
> f. Neither case has begun discovery.

**ECF No. 90**; *see also* **ECF No. 90-1** (copy of first motion to consolidate cases filed in the Municipalities Case). And most recently, on August 22, 2025, San Juan filed a second informative motion attaching their second motion to consolidate cases filed in the Municipalities Case, in which San Juan restated its arguments for consolidation and further argued:

> c. As an example of wasted resources by **not** having these cases consolidated, Your Honor referred the dispositive motions to Magistrate Judge Héctor L. Ramos, who entered a 93-page Report and Recommendation on February 20, 2025 (D.E. 315) in this case. Her honor Aida Delgado then proceeded to refer the similar pending dispositive motions in the other case also to Magistrate Ramos, Docket 222, which resulted in a very similar, non-contradictory Report and Recommendation of 80 pages in the newer case with the Municipality of San Juan at Docket 239. The objections to the Report and Recommendation to both similar documents by the same parties and lawyers in both cases ensued.
> . . .
> f. Finally, we are confident that this consolidation would not be much of an additional burden on your Honor, as the orders in both cases would be mirrored due to the identity of issues presented by similar parties.

**ECF No. 280-1** (copy of second motion for consolidation filed in Municipalities' Case).

[5] The major difference is that, because BHP, Shell, BP, and Rio Tinto were served long after Exxon, Chevron, ConocoPhillips, Motiva and Occidental, their motions to dismiss were filed months later. In the Municipalities' Case, all the motions to dismiss were filed jointly or contemporaneously. Therefore, here the later-filed motions by BHP, Shell, BP, and Rio Tinto incorporate by reference the arguments included in the joint motions to dismiss and for judicial notice filed by Exxon, Chevron, ConocoPhillips, Motiva and Occidental. *See* **ECF No. 119** at 2 ("[BHP, Shell, and BP] should be dismissed from this case for all the reasons [Exxon, Chevron, ConocoPhillips, Motiva and Occidental] identified in their pending motions. [**ECF Nos. 31, 34, 35**]. [BHP, Shell, and BP] therefore join those motions and adopt by reference the contents of those motions, pursuant to Local Rule 7(f)."); **ECF No. 148** at 7 ("Pursuant to L. Civ. R. 7(f), Rio Tinto adopts and incorporates by reference [**ECF No. 31, 34, 119**.]"); **ECF No. 149** at 6 (same).

**153, 154, 180, 182, 183, 184, 185**; *see also* **ECF Nos. 180, 182, 183, 184, 185** (all including a version

of the following footnote: "Plaintiff herein adopts and adapts arguments used in the companion

case of Municipality of Bayam[ó]n, et al. v. Exxon Mobil Corp., et al., Civil [No.] 22-01550 (SCC)

. . . in order to achieve a unified posture and rulings for these similar cases.").

On February 20, 2025, the Magistrate Judge issued a thorough R&R in the Municipalities'

Case recommending that the Court dismiss all the Puerto Rico law causes of action for failure

to state a claim upon which relief can be granted. *See* R&R, *Mun. of Bayamón, et al. v. Exxon Mobil

Corp.*, Case No. 22-cv-1550 (SCC), at ECF No. 315. The Magistrate Judge also recommended

dismissing the claims under section 1962(a) and (b) of the Racketeering Influence Corrupt

Organizations Act ("RICO"). However, he recommended denying the motions to dismiss as to

the claims brought under section 1962(c) and (d) of the RICO and the Clayton Act claims,

recommending that San Juan be allowed to engage in discovery.

After the issuance of the R&R in the Municipalities Case, on March 20, 2025, San Juan

filed an informative motion in which it brought the R&R to this Court's attention. *See* **ECF No.

156**. San Juan stated the following:

> This court has correctly entertained in the past the convenience of consolidating
> both cases, see [ECF Nos. 64 and 65], in order to avoid contradictory rulings and
> to preserve the resources of the courts. The motion practice by defendants in both
> cases are practically mirrored in each other, filing the initial ones in the older
> [Municipalities' Case] and subsequent ones in this one. Likewise, much of the
> responses to the motions in our case here are similar to [those filed in] the
> [Municipalities' Case]. . . . Enclosed is the 93-page [R&R] . . . produced by
> Magistrate Judge Ramos a month ago today. Those dispositive motions reviewed

and ruled upon by Magistrate Judge in the [Municipalities' Case] mirror the ones pending before this Honorable Court."

*Id.*, at 1-2. After ordering the re-filing of certain responses and authorizing the filing of reply briefs with regard to the motions to dismiss (**ECF Nos. 163, 172, 188**), the Court, on May 22, 2025, also referred the pending motions to Magistrate Judge Ramos-Vega for an R&R "[i]n light of the similarities between the factual allegations and legal issues in this case and those in [the Municipalities' Case] and given United States Magistrate Judge Héctor L. Ramos-Vega['s] familiarity with the latter case. **ECF No. 222**. The Magistrate Judge issued his R&R for this case on July 22, 2025, which closely traced his previous R&R and recommended the same course of action. **ECF No. 239**. The parties filed objections (**ECF Nos. 242-252**), responses to objections (**ECF Nos. 266-274, 279**), and replies (**ECF Nos. 281-1, 282-1, 283-289**), all substantively similar or identical to those filed in the Municipalities' Case.[6]

### B. The Omnibus O&O issued in the Municipalities' Case

On September 11, 2025, Judge Carreño issued a lengthy Omnibus Opinion and Order in the Municipalities' Case adopting in part the Magistrate Judge's R&R. *See* Omnibus Opinion and Order, *Mun. of Bayamón, et al. v. Exxon Mobil Corp.*, Case No. 22-cv-1550 (SCC), at ECF No.

---

[6] In particular, San Juan's objections here are virtually identical to those in the Municipalities' Case. The only differences this Court can discern are: (i) a few insubstantial stylistic variations; (ii) that the objections there address the R&R's recommendations as to the additional co-defendant API, whereas those references are omitted in the objections filed here; (iii) the substitution of citations to the Magistrate Judge's R&R in the Municipalities Case for ones from the R&R issued in this case; and (iv) that the objections filed in the Municipalities' Case contain pin cites to allegations in that case's amended complaint, whereas the objections here does not contain citations to the complaint (*compare*, *e.g.*, **ECF No. 242** at 16 *with* Municipalities' Case, ECF No. 322 at 18). This last difference is in line with other instances of notable citation omissions previously identified by this Court. *See* **ECF No. 167** at 17-18 nn. 15-16.

407 ("Omnibus O&O"). The court engaged in a lengthy analysis of personal jurisdiction under the federal RICO and Clayton Acts as well as for the Puerto Rico law claims. In short, while most of the analysis was made under the applicable framework for the RICO claims, this nonetheless ultimately led to applying Puerto Rico's tripartite long-arm statute test to the well-pled allegations against defendants, *i.e.*, the minimum contacts test. Ultimately, the court determined that Exxon, Shell, BP, ConocoPhillips, Chevron, and Motiva satisfied the minimum contacts test, but that BHP and Rio Tinto did not. Accordingly, it found personal jurisdiction over all claims against Exxon, Shell, BP, ConocoPhillips, Chevron, and Motiva, but no personal jurisdiction over BP and Rio Tinto with regards to any claim. *See* Omnibus O&O, at 74-75. As to Occidental, the court found that service had been improper and there was thus no personal jurisdiction over it, although it stated that it saw "no reason why the claims against Occidental do not also fail" and refused to allow San Juan to attempt service again. *Id.*, at 8-9.

The court then proceeded to analyze defendants' statute of limitations arguments under Fed. R. Civ. P. 12(b)(6). The court began by adopting the Magistrate Judge's unobjected recommendation to dismiss the first three causes of action for common law consumer fraud, conspiracy to commit common law consumer fraud and deceptive business practices, and misleading practices and advertisement. Omnibus O&O, at 79. Then, the court analyzed the parties' objections and positions as to defendants' statute of limitations defense on the RICO, Clayton Act, and remaining Puerto Rico law claims. In essence, the court found that the allegations in the complaint demonstrated that the plaintiffs had sufficient notice of the damages

they allege to have suffered since September 2017, the month when Hurricanes Irma and María passed through Puerto Rico. The court also held that plaintiffs knew of the identities of the defendants who caused the damages since before September 2017. In doing so, the court rejected the plaintiffs' argument that they only became aware of the causal connection between their injuries and defendants' practices in March 2022 upon the publishing of a report. Accordingly, because both RICO and the Clayton Act apply a four-year statute of limitations period counted from the date in which plaintiffs knew or should have known of their injuries, and because Puerto Rico's shorter, one-year statute of limitation period does likewise, all claims were time-barred as of September 2021. *See* Omnibus O&O at 81 ("By September 2021, the 2017 hurricane's four-year mark, Plaintiffs knew or should have known they had suffered considerable injury and who to sue."); 91 ("As with RICO, Plaintiffs felt the adverse impact in September 2017 and the clock began to run then."); 97 (Plaintiffs make clear that the racketeering activity preceded the 2017 storms.. . . And where Plaintiffs allege specific kinds of damage, it is, as with Puerto Rico law claims, related to the 2017 storms."); 98 ("The antitrust claim is similarly all about activity leading up to the 2017 storms."); 103 "(Here, Plaintiffs, across the Puerto Rico law claims, treat the injury as the 2017 storms."); 109 ("Here, assuming Defendants contributed to the 2017 storms and that they engaged in misrepresentations, by 2021, all the 'telltale warning signs' were present that Plaintiffs suffered injury because of Defendants' alleged contribution to the severity of the 2017 storms.").

In making its finding, the Court rejected plaintiff's argument that the statute of limitations should be tolled. The court refused to extend the application of the continuing tort, continuing violation, or separate accrual doctrines under both the federal and Puerto Rico law claims.

### C. Application of Omnibus O&O to this case.

Given this comprehensive ruling, the conceded similarities between both cases, and the pending objections to the R&R in this case, the Court ordered San Juan on September 11, 2025, to show cause why the Court should not dismiss the case in accordance with the Omnibus O&O. **ECF No. 292**. San Juan complied on October 1, 2025. **ECF No. 297**.

San Juan tries to distinguish its case in a handful of ways. First, it points out that co-defendant Occidental did not raise an argument on lack of personal jurisdiction "as there was no issue here in the service of this complaint upon this defendant." **ECF No. 297** at 3. That is not accurate. In the Omnibus O&O, the court dismissed Occidental for improper service and consequently found its other arguments under Rule 12(b)(2) and 12(b)(6) moot. Omnibus O&O at 8-9. But it also stated that "the entire case will be dismissed, and [saw] no reason why the claims against Occidental do not also fail." *Id.* Here, as in the Municipalities' Case, Occidental raised a personal jurisdiction argument on Rule 12(b)(2) grounds. *See* **ECF No. 28**. The R&R likened the arguments to that of other co-defendants and ultimately recommended that discovery be allowed to "expand and shed light on these sorts of issues." **ECF No. 239** at 34 n.9. But the fact is that the claims against Occidental are on the same footing as those against the

defendants that the court found it had jurisdiction over, making its statute of limitations analysis equally applicable.

Second, San Juan points out that its complaint does not include the American Petroleum Institute ("API") as a defendant. **ECF No. 297** at 3. San Juan merely highlights the presence of API in the Municipalities' Case but does not argue why this makes the Omnibus O&O's analysis inapplicable to this case. As explained above, API was included in an amended complaint filed in the Municipalities' Case. API is an oil and gas industry association in which Exxon, Shell, Chevron, BP, Conoco, and Motiva are alleged to have belonged to or participated in, and which is alleged to have undertaken efforts to mislead and disinform the public as to the hazards of fossil fuel products. **ECF No. 1** at 47 ¶ 168.a. Indeed, according to the Racketeering Statement filed in the Municipalities Case (which was then filed verbatim in this case, *see* **ECF No. 76** and **ECF No. 167** at 18-19), API serves the same general goals of the Global Climate Coalition ("GCC"), another trade association that is featured prominently in the complaint in this case and that is alleged to have been "an association-in-fact enterprise" for defendants to engage in their allegedly wrongful conduct. *See* **ECF No. 76** at 2-8 ¶ 2. However, the GCC is alleged to have "formally disbanded" in 2002, whereas the API still exists as a juridical entity. Therefore, that the Omnibus O&O's analysis includes reference to specific allegations against API does not alter its applicability to the allegations against the rest of the defendants. San Juan, in any case, does not argue otherwise.

Third, San Juan claims that the reasoning of the Omnibus O&O relies on the absence of further proof that could have been attained by discovery. **ECF No. 297** at 3-4. But this position squarely contradicts San Juan's objections to the R&R, in which it firmly opposes the Magistrate Judge's recommendation to engage in further discovery. *See* **ECF No. 242** at 2-4. In any case, the discovery recommended by the Magistrate Judge was for matters concerning the exercise of personal jurisdiction over defendants, not to supplement the complaint with additional facts to survive a statute of limitations defense.[7] In that sense, San Juan's argument is unavailing.

Finally, San Juan disagrees with the Omnibus O&O's dismissal of the claims against Exxon, Shell, Chevron, BP, and Motiva's with prejudice on statute of limitations grounds. San Juan's reasoning boils down to two points: (i) that the Omnibus O&O misapplied the continuous tort doctrine, and (ii) that the Omnibus O&O refused to lend credence to San Juan's allegations of equitable tolling for fraudulent concealment.[8] However, these are arguments that were addressed by Omnibus O&O (pp. 79-119) and figure prominently in defendants' objections in both cases (*compare* **ECF No. 247** at 33-41 *with* Municipalities' Case, ECF No. 326 at 33-42)—and to which San Juan responded in exactly the same fashion as the plaintiffs in the Municipalities' Case did, with no additional arguments (*compare* **ECF No. 266** at 5-6 *with* Municipalities' Case,

---

[7] San Juan does not explain its abrupt shift in position or how discovery on jurisdictional matters will help it overcome a statute of limitations defense—unless it intends to engage in a fishing expedition.

[8] Although San Juan incorporates three "memorandums" in its motion, the first and third ones both refer to the continuous tort doctrine. Also, San Juan disclaims the applicability of class action tolling. **ECF No. 297** at 7 n.1.

ECF No. 345 at 9-10). The Court sees no reason why it should depart from the thoughtful statute of limitations analysis performed by its sister court in the Municipalities' Case.

Accordingly, in the interest of uniformity and judicial efficiency, to avoid inconsistent decisions on the same facts and law, and to facilitate streamlined appellate review (if sought)[9], the Court will incorporate as if stated herein the reasoning of the Omnibus O&O as to the dismissal without prejudice of the claims against BHP and Rio Tinto for lack of subject matter jurisdiction, and as to the dismissal with prejudice of all claims against the remaining defendants (including Occidental) on statute of limitations grounds. Leave to amend the complaint is denied. *See* Omnibus O&O at 120-121.

Consequently, after a close review of the filings on record here and in the Municipalities' Case, the R&R at **ECF No. 239** is **ADOPTED IN PART**. It is adopted insofar as it recommends the Court grant the motion for judicial notice at **ECF No. 35** only to take judicial notice of the fact that the articles and reports were published. The recommendation to dismiss all Puerto Rico law claims is adopted for the reasons set forth in the Omnibus O&O. The recommendations to deny dismissal of all federal RICO and Clayton Act claims and permit jurisdictional discovery is rejected.

---

[9] Plaintiffs in the Municipalities' Case have already filed a notice of appeal. See Notice of Appeal, Municipalities' Case, at ECF No. 410 (Oct. 7, 2025).

Accordingly, the Court rules of the pending motions as follows:

1. The joint motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) at **ECF No. 31** is **DENIED** as to Exxon, Chevron, ConocoPhillips, Motiva, and Occidental.[10]

2. The joint motion to dismiss for failure to state a claim under Rule 12(b)(6) at **ECF No. 34** and is **GRANTED** as to Exxon, Chevron, ConocoPhillips, Motiva, and Occidental.

3. The motion at **ECF No. 35** is **GRANTED** only to take judicial notice of the fact that the articles and reports were published.

4. The joint motion to dismiss for lack of personal jurisdiction and failure to state a claim at **ECF No. 119** is **GRANTED IN PART, DENIED IN PART**. It is **GRANTED** as to BHP inasmuch as it incorporates the Rule 12(b)(2) arguments of **ECF No. 31**. It is **GRANTED** as to Shell and BP inasmuch as it incorporates the Rule 12(b)(6) arguments of **ECF No. 34**. It is **GRANTED** as to BHP, Shell, and BP inasmuch it incorporates the request for judicial notice at **ECF No. 35**.

---

[10] Occidental filed an individual motion to dismiss for both lack of personal jurisdiction and failure to state a claim (**ECF No. 28**) and also joined in filing the joint motions at **ECF Nos. 31** and **34**. The Omnibus O&O disposed of the claims against Occidental for improper service under Fed. R. Civ. P. 12(b)(5), an argument that was not raised in this case. Accordingly, the Omnibus O&O does not engage in a personal jurisdiction analysis for Occidental as it did for the rest of the co-defendants. The Court will not waste resources undertaking this complex jurisdictional analysis for one defendant when the claims against it also fail under Rule 12(b)(6). *Cf. N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 12 (1st Cir. 2009) ("Where an appeal presents a difficult jurisdictional issue, yet the substantive merits underlying the issue are facilely resolved in favor of the party challenging jurisdiction, the jurisdictional inquiry may be avoided.") (citation modified); *Feldman v. Woodlock*, No. CIV.A. 14-12279-FDS, 2014 WL 7188923, at *5 (D. Mass. Dec. 17, 2014), *aff'd* (Jan. 20, 2016) ("Because the substantive issues underlying the non-jurisdictional motions to dismiss are easily resolved in favor of defendants, the jurisdictional motions need not be addressed."); *Doe 171 v. Ord. of Saint Benedict*, No. CIV. 11-1406 JAF, 2012 WL 1410320, at *3 (D.P.R. Apr. 20, 2012) ("Because we dismiss all claims based on statute of limitations grounds under Federal Rule of Civil Procedure 12(b)(6), we do not reach the Order's personal jurisdiction arguments under Rule 12(b)(2).").

**Civil No. 23-1608 (ADC)** Page 13

5. BHP's motion to dismiss for lack of subject matter jurisdiction at **ECF No. 123** is **GRANTED**.

6. Rio Tinto's motion to dismiss for lack of personal jurisdiction at **ECF No. 148** is **GRANTED**.

7. The individual motions at **ECF Nos. 28, 32, 36, 37, 39, 120, 121, 122,** and **149** are **MOOT** in light of the Court's granting of the motions at **ECF Nos. 34** and **119**.

The Clerk of Court shall enter judgment dismissing all claims against Exxon, Chevron, ConocoPhillips, Motiva, Occidental, BP, and Shell **WITH PREJUDICE**, and dismissing all claims against BHP and Rio Tinto **WITHOUT PREJUDICE**.[11]

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2025.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**

---

[11] "The personal jurisdiction dismissals will be without prejudice because 'no jurisdiction' and 'with prejudice' are mutually exclusive. But new process belongs in a different court. These jurisdictional dispositions are, in other words, conclusive on the jurisdictional questions." Omnibus O&O at 75 (citation modified).

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**THE MUNICIPALITY OF SAN JUAN,**
    **Plaintiff,**

    **v.**

**EXXON MOBIL CORP. et al.,**
    **Defendants.**

Civ. No. 23-1608 (ADC)

## <u>JUDGMENT</u>

The Court, through the Honorable Aida M. Delgado-Colón, U.S. District Judge, issued its Opinion and Order dated September 30, 2025, at ECF No. 298.

Pursuant to the Court's Order, Judgment is hereby entered accordingly.

The case is hereby **DISMISSED WITH PREJUDICE** as to all claims against Exxon, Chevron, ConocoPhillips, Motiva, Occidental, BP, and Shell. The case is hereby **DISMISSED WITHOUT PREJUDICE** as to all claims against BHP and Rio Tinto.

**IT IS SO ORDERED AND ADJUDGED**.

In San Juan, Puerto Rico, on this September 30th, 2025.

ADA I. GARCIA-RIVERA, CPA, ESQ.
Clerk of the Court


By: *S/Verónica S. Otero-Rivera*
    Verónica S. Otero-Rivera
    Courtroom Deputy Clerk

**40**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MUNICIPALITY OF SAN JUAN, | |
| Plaintiff, | CIVIL NO.: 23-1608 (ADC) |
| v. | |
| EXXON MOBIL CORP., et al., | |
| Defendants. | |

## NOTICE OF APPEAL

**TO THE HONORABLE COURT:**

Notice is hereby given that Plaintiff MUNICIPALITY OF SAN JUAN, hereby appeals to the United States Court of Appeals for the First Circuit, from the *OPINION AND ORDER* entered on October 8, 2025 (Docket No. 298), the *JUDGMENT* entered on that same date dismissing this case with prejudice as to all claims against Exxon, Chevron, ConocoPhillips, Motiva, Occidental, BP, and Shell (Docket No. 301), and the *ORDERS* entered on April 9 and May 7, 2025 ordering Plaintiff's attorney to pay sanctions (Dockets No. 167 and193).

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

1

41

In San Juan, Puerto Rico, this 23rd day of October 2025.

Respectfully submitted,

**LAW OFFICES DAVID EFRON, PC**
*Attorneys for Plaintiff*
PO Box 29314
San Juan, PR 00929-0314
Tel. (787) 753-6455
Fax (787) 758-5515

*s/David Efron*
**DAVID EFRON**
**USDC-PR 125701**
efron@davidefronlaw.com

2

**42**